UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, AND ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> WELLNESS PAIN & ASSOCIATES, INC., MIDTOWN SURGICAL GROUP CORP., AZOG, P.A., LAMONT RATCLIFF, REGINALD WILLIAMS, M.D., ROBERT CASIMIR, M.D., JAMES MARK MCBATH, M.D., KELECHI AZUOGU, M.D., AND TAMARA WELSH, N.P. <br><br> Defendants. | C.A. No.: ___ |

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate County Mutual Insurance Company (collectively, "Allstate" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

## I.   INTRODUCTION

1.      This case is about a "pain management" clinic and its owner and affiliated providers, who engaged in a scheme to defraud Allstate by submitting and causing to be submitted false and fraudulent records, bills, and invoices (hereafter, "false medical documentation") through

1

the U.S. Mail for treatment and services that were not actually performed, were unlawful, were medically unnecessary, and were fraudulently billed.

2.     The insurance fraud scheme perpetrated by the defendants was designed to, and did in fact, result in payments from Allstate to and for the benefit of the defendants.

3.     All of the acts and omissions of the defendants, described throughout this Complaint, were undertaken intentionally.

4.     By this Complaint, Allstate asserts claims against the defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common law fraud; (3) civil conspiracy to commit fraud; and (4) restitution of money had and received.

5.     Allstate also seeks declaratory relief that no pending claims submitted to it by or on behalf of the defendants are compensable.

6.     As a result of the defendants' fraudulent acts, Allstate has paid hundreds of thousands of dollars to resolve insurance claims that were based on the false medical documentation submitted by or on behalf of the defendants.

## II.    **THE PARTIES**

### A.    **PLAINTIFFS**

7.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate Fire & Casualty Insurance Company, are corporations duly organized and existing under the laws of the State of Illinois, having their principal place of business in Northbrook, Illinois.

8.     Allstate County Mutual Insurance Company is a corporation duly organized and existing under the laws of the State of Texas, having its principal place of business in Irving, Texas.

9.      At all relevant times to the allegations contained in this Complaint, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate County Mutual Insurance Company were each authorized to conduct business in Texas.

B.      **DEFENDANTS**

1.      **Healthcare Corporation Defendants**

a.      ***Wellness Pain & Associates, Inc.***

10.      Wellness Pain & Associates, Inc. ("Wellness Pain") is organized under the laws of the State of Texas.

11.      During the relevant treatment period, Wellness Pain maintained its principal place of business at 2101 Crawford Street, Suite 214, Houston, Texas 77002.

12.      Wellness Pain also maintained a registered address at 2000 Crawford Street, 16th Floor, Suite A, Houston, Texas 77002.

13.      Furthermore, Wellness Pain maintained a mailing address at 5959 Richmond Avenue, Suite 200, Houston, Texas 77057.

14.      During the relevant time period, Wellness Pain was owned by Lamont Ratcliff ("Ratcliff") and Reginald Williams, M.D. ("Williams").[1]

15.      Ratcliff, Williams, James Mark McBath, M.D. ("McBath"), Kelechi Azuogu, M.D. ("Azuogu"), Tamara Welsh, N.P. ("Welsh"), Midtown Surgical Group Corp. ("Midtown Surgical"), and Azog, P.A. ("Azog") operated and controlled the Wellness Pain enterprise.

---

[1] Williams co-owned and acted as the medical director of Wellness Pain from its formation in 2016 until 2019.

16.     Wellness Pain billed for services not rendered, that were medically unnecessary (to the extent they were rendered at all), and were unlawful, including all of the patients identified in **Exhibit 1**.

### b.     *Midtown Surgical Group Corp.*

17.     Midtown Surgical is organized under the laws of the State of Texas.

18.     During the relevant treatment period, Midtown Surgical maintained its principal place of business at 5959 Richmond Avenue, Suite 200, Houston, Texas 77057.

19.     Midtown Surgical also maintained a registered address at 9900 Spectrum Drive, Austin, Texas 78717.

20.     During the relevant time period, Midtown Surgical was owned by Ratcliff.

21.     At all relevant times, Midtown Surgical was operated and conducted by defendant Ratcliff.

22.     Midtown Surgical did not possess the requisite licensure to operate as a surgical center under Texas law.

23.     Ratcliff, Casimir, McBath, and Wellness Pain operated and controlled the Midtown Surgical enterprise.

24.     Midtown Surgical billed for services not rendered, that were medically unnecessary (to the extent they were rendered at all), and were unlawful, including all of the patients identified in **Exhibit 2**.

### c.     *Azog, P.A.*

25.     Azog is organized under the laws of the State of Texas.

26.     During the relevant period, Azog maintained its principal place of business at 6930 Sable River Drive, Missouri City, Texas 77459.

4

27.     During the relevant time period, Azog was owned by Azuogu.

28.     At all relevant times, Azog was operated and conducted by defendant Azuogu.

29.     Azog contracted with Wellness Pain to provide services on Wellness Pain's behalf.

30.     Ratcliff, Azuogu, and Wellness Pain operated and controlled the Azog enterprise.

     2.    **Management Defendants**

       a.    ***Lamont Ratcliff***

31.     Defendant Ratcliff is a resident and citizen of the State of Texas.

32.     At no time has Ratcliff been licensed or otherwise authorized to practice nursing, physical therapy, chiropractic, or medicine in the State of Texas or elsewhere.

33.     According to records on file with the Secretary of State, Ratcliff is the record shareholder, officer and/or director of Wellness Pain.

34.     According to records on file with the Secretary of State, Ratcliff is the record shareholder, officer and/or director of Midtown Surgical.

35.     At all relevant times, Ratcliff operated and conducted the affairs of defendants Wellness Pain, Midtown Surgical, and Azog.

36.     Ratcliff caused Wellness Pain to bill for fraudulent and medically unnecessary services for patients of Wellness Pain.

37.     Ratcliff caused Midtown Surgical to bill for fraudulent and medically unnecessary services for patients of Midtown Surgical.

38.     Because he directly participated in the operation and management of the Wellness Pain, Midtown Surgical, and Azog enterprises throughout the course of this scheme, defendant Ratcliff is responsible for the fraudulent services and treatments rendered to patients of these

entities, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to these entities.

### b.   *Reginald Williams, M.D.*

39.     Defendant Williams is a resident and citizen of the State of Texas.

40.     From 2008 to 2019, Williams was licensed to practice medicine in the State of Texas.

41.     Williams' medical license was cancelled by the Texas Medical Board on June 14, 2019, following Williams' guilty plea to criminal charges of issuing medically unnecessary prescriptions for controlled substances.

42.     Williams operated and conducted the affairs of defendant Wellness Pain.

43.     Williams caused Wellness Pain to bill for fraudulent and medically unnecessary services for patients of Wellness Pain.

44.     Williams was criminally charged in connection with these services. *See USA v. Williams*, Criminal Docket No. 4:17-cr-00421 (S.D. Tex.).

45.     Because he directly participated in the operation and management of the Wellness Pain enterprise throughout the course of this scheme, defendant Williams is responsible for the fraudulent services rendered to patients of this entity, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to this entity.

### 3.   <u>Provider Defendants</u>

### a.   *Robert Casimir, M.D.*

46.     Defendant Robert Casimir, M.D. ("Casimir") is a resident and citizen of the State of Texas.

47.     At all relevant times, Casimir has been licensed to practice medicine in the State of Texas.

48.     From 2021 to present, Casimir purportedly provided treatment to Allstate claimants at Midtown Surgical.

49.     Casimir received patient referrals from Wellness Pain for injection services at Midtown Surgical.

50.     Casimir caused Midtown Surgical to bill for fraudulent and medically unnecessary services for patients of Midtown Surgical.

51.     Because he directly participated in the operation and management of the Midtown Surgical enterprise throughout the course of this scheme, defendant Casimir is responsible for the fraudulent services rendered to patients of this entity, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to this entity.

### b.     James Mark McBath, M.D.

52.     Defendant James Mark McBath, M.D. ("McBath") is a resident and citizen of the State of Texas.

53.     At all relevant times, McBath has been licensed to practice medicine in the State of Texas.

54.     In 2021, McBath replaced Azuogu as the medical director of Wellness Pain.

55.     From 2021 to present, McBath operated and conducted the affairs of defendant Wellness Pain.

56.     McBath caused Wellness Pain to bill for fraudulent and medically unnecessary services for patients of Wellness Pain.

57.     McBath then caused Wellness Pain to make unnecessary referrals for injection services at Midtown Surgical.

58.     Because he directly participated in the operation and management of the Wellness Pain and Midtown Surgical enterprises throughout the course of this scheme, defendant McBath is responsible for the fraudulent services rendered to patients of these entities, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to these entities.

### c.     Kelechi Azuogu, M.D.

59.     Defendant Kelechi Azuogu, M.D. ("Azuogu") is a resident and citizen of the State of Texas.

60.     At all relevant times, Azuogu has been licensed to practice medicine in the State of Texas.

61.     Azuogu operated and conducted the affairs of defendant Wellness Pain by acting as its medical director.

62.     Azuogu contracted to provide services on behalf of Wellness Pain through his professional entity, Azog.

63.     In 2021, Azuogu was replaced by McBath as Wellness Pain's medical director.

64.     Azuogu caused Wellness Pain to bill for fraudulent, and medically unnecessary services for patients of Wellness Pain.

65.     Because he directly participated in the operation and management of the Wellness Pain and Azog enterprises throughout the course of this scheme, defendant Azuogu is responsible for the fraudulent services rendered to patients of these entities, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to these entities.

8

### d.   Tamara Welsh, N.P.

66.   Defendant Tamara Welsh, N.P. ("Welsh") is a resident and citizen of the State of Texas.

67.   At all relevant times, Welsh has been licensed to practice nursing in the State of Texas.

68.   Welsh allegedly treated Allstate claimants at Wellness Pain.

69.   Welsh agents caused Wellness Pain to bill for fraudulent and medically unnecessary services for patients of Wellness Pain.

70.   Because she directly participated in the operation and management of the Wellness Pain enterprise throughout the course of this scheme, defendant Welsh is responsible for the fraudulent services rendered to patients of this entity, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to this entity.

## III.   JURISDICTION AND VENUE

71.   Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to the claims brought by the plaintiffs under 18 U.S.C. § 1961, *et seq.* because they arise under the laws of the United States.

72.   Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

73.   Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), whereas a substantial part of the events giving rise to Allstate's claims occurred in the Southern District of Texas.

## IV.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.     CRIMINAL AND DISCIPLINARY CHARGES

#### i.  Criminal Charges Against Lamont Ratcliff

74.     Ratcliff was criminally charged in the United States District Court for the Southern District of Texas in connection with an insurance fraud conspiracy scheme. *See USA v. Stern*, Criminal Docket No. 4:19-cr-00450 (S.D. Tex.).

75.     On August 6, 2019, Ratcliff was indicted on charges of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and willfully filing a false tax return in violation of 26 U.S.C. § 7206(1). *Stern*, 19cr450, at ECF No. 8.

76.     Ratcliff was allegedly involved in a conspiracy pursuant to which lawyers paid several "runners" to generate personal injury referrals in exchange for illegal kickback payments.

77.     Ratcliff was identified as one of the "runners," who engaged in barratry (or "ambulance chasing") to generate patient referrals to these lawyers in exchange for payment of kickbacks disguised as "referral fees."

78.     On April 29, 2022, the Court accepted Ratcliff's guilty plea in connection with the allegations of willfully filing a false tax return. *Id.* at ECF No. 220.

79.      Pursuant to this plea, Ratcliff admitted that, as the majority owner of Wellness Pain, he accepted illegal kickback payments from at least one attorney in exchange for personal injury client referrals.

80.     Ratcliff then concealed these payments, failing to report this income in Wellness Pain's corporate tax returns.

81.     While this scheme was ongoing, Ratcliff maintained an ownership interest in Wellness Pain.

82.     Ratcliff and his co-conspirators used the fraudulent network outlined in this indictment to ensure a steady stream of patients were available for treatment at Wellness Pain and Midtown Surgical.

83.     These patients were then subjected to a predetermined treatment protocol designed to maximize profits at the expense of patient wellbeing.

84.     On January 13, 2023, Ratcliff testified as a witness against his alleged co-conspirator, Richard Plezia, a Texas personal injury attorney. *Id.* at ECF No. 407.

85.     Ratcliff testified under oath that Wellness Pain engaged in improper kickback arrangements with personal injury attorneys in exchange for patient referrals.

86.     Furthermore, Ratcliff testified that he identified some potential patients through police reports issued by the Houston Police Department.

87.     Ratcliff stated that he paid bribes to a contact within the Houston Police Department in exchange for the illegal release of police reports to Ratcliff in advance of their release to the public.

88.     A true and accurate copy of Ratcliff's testimony on this topic from the criminal trial of Richard Plezia is depicted below:

> **Q**    Okay.  And then did you also get patients by purchasing reports from someone at Houston Police Department?
>
> **A**    I did.
>
> **Q**    Okay.  Tell me how that worked.
>
> **A**    I had a working relationship with someone that worked at HPD that was in charge of accident records, when people were involved in accidents, and I was paying her to give me those reports early.  And in return, we would turn those reports into patients, and then, subsequently, send those to attorneys.

> And was that permissible for her to give you those reports?
>
> No.
>
> Was it illegal?
>
> Yes.

*USA v. Stern*, 4:19-cr-00450 (S.D. Tex.), ECF No. 407, at pp. 42:2-25, 43:1-6.

89.    Ratcliff further testified that he is not a licensed nurse, as he has otherwise represented. *Id.* at pp. 73:16-21.

90.    A true and accurate copy of Ratcliff's testimony on this topic from the trial of Richard Plezia is depicted below:

12

```
Q    Now, you said that when you -- after you graduated

from -- did -- you got a degree from U of H, right?

A    Correct.  Yes, sir.

Q    Biology -- was it in biology or -- and nursing?

A    Biology.  I wanted to be a nurse, but I never did take the

test for nursing.
```

*Id.* at pp. 73:16-21.

91.     Despite not being a licensed medical professional, Ratcliff still treated patients at Wellness Pain. *Id.* at pp. 47:7-10.

92.     A true and accurate copy of Ratcliff's testimony on this topic from the trial of Richard Plezia is depicted below:

```
Q    Do you meet with the -- the new patients when they come in?

A    Some of them I did; some I didn't.

Q    Okay.

A    For the most part, most of them I did.
```

### ii.  Criminal Charges Against Reginald Williams, M.D.

93.     Williams was criminally charged in the United States District Court for the Southern District of Texas in connection with a scheme to unlawfully distribute controlled substances regardless of medical necessity. *See USA v. Williams*, Criminal Docket No. 4:17-cr-00421 (S.D. Tex.).

94.     On July 6, 2017, Williams was indicted on charges of distribution of controlled substances in violation of 21 U.S.C. § 841. *Id.* at ECF No. 1 (Indictment).

13

95.     Williams allegedly acted as the supervising physician at a pain clinic, where he issued medically unnecessary prescriptions for hydrocodone outside the standard of care for the dispensation of controlled substances.

96.     On November 2, 2018, Williams pleaded guilty to the charges. *Id.* at ECF No. 46 (Guilty Plea).

97.     Pursuant to the guilty plea, Williams admitted that he was acting as the supervising physician at "Wellness Management Group," which was described as "an unlicensed, unregistered pain management clinic located at 2000 Crawford Street, 1600, Suite A and B, in Houston, Texas."

98.     "Wellness Management Group" is, in fact, another name for defendant Wellness Pain.

99.     Wellness Pain is affiliated with the 2000 Crawford Street address, and was previously co-owned by Williams.

100.    Furthermore, Ratcliff's LinkedIn page identifies him as the owner of "Wellness Management Group," at 2000 Crawford Street, in Houston, Texas.



lamont ratcliff
Owner, Wellness Management Group
Houston, Texas, United States
65 followers · 59 connections

101.    It was in this role that Williams issued prescriptions for medically unnecessary controlled substances to multiple patients.

102.   Williams allegedly coached one of the patients on how to fill out the medical paperwork to make the prescriptions appear medically necessary, in exchange for a $500 cash bribe paid to the patient.

103.   Williams admitted that the medications were prescribed with no legitimate medical purpose and outside the scope of professional practice.

104.   Williams was sentenced to thirty-six (36) months of imprisonment on April 3, 2019. *Id.* at ECF no. 69.

105.   As a result of Williams' guilty plea and sentencing, Williams' medical license was cancelled by the Texas Medical Board on June 14, 2019.

### iii.   James Mark McBath, M.D.'s Disciplinary History

106.   McBath maintains an extensive disciplinary history with the Texas Medical Board.

107.   McBath was initially disciplined on April 7, 2006, when the Texas Medical Board issued a public reprimand for failure to adequately keep medical records, and failure to meet the standard of care for surgical patients.

108.   As a result, McBath was required to perform three (3) years of continuing education, and pay an administrative penalty of $15,000.00.

109.   On June 30, 2010, McBath was again disciplined for failure to maintain adequate patient records, and for providing false information to the Texas Medical Board.

110.   McBath was required to undergo continuing education for medical record keeping and risk management, and to pay an administrative penalty of $2,000.00.

111.   McBath was yet again disciplined on February 8, 2013, based on failure to complete the continuing medical education requirements ordered by the Board in 2010.

112.    As a result, McBath was required to pass a medical jurisprudence examination, undergo continuing medical education in ethics, and pay a $3,000.00 administrative penalty.

113.    Most recently, on June 12, 2020, McBath was reprimanded by the Texas Medical Board for: (1) prescribing an ineffective weight loss regimen, (2) failing to monitor or explain prescribed medications, and (3) failure to provide a refund after not rendering services.

114.    This lengthy history of discipline demonstrates not only that McBath has engaged in a pattern of questionable medical practices, but also poses a potential barrier to McBath's ability to obtain legitimate employment in a properly licensed medical facility.

### B.    GENERAL OVERVIEW OF DEFENDANTS' SCHEME TO DEFRAUD ALLSTATE

115.    The defendants intentionally engaged in conduct to defraud insurers through the submission of fraudulent medical documentation.

116.    Allstate is one of the insurance providers victimized by this scheme.

117.    Wellness Pain, Midtown Surgical, Azog, and the owners and providers associated therewith, engaged in a scheme to fraudulently bill for: (1) unlicensed services; (2) services that were not rendered; (3) unlawful services; and, (4) services that, when they were actually performed, were medically unnecessary and performed pursuant to a boilerplate treatment protocol designed to inflate billing.

118.    The defendants worked with several law firms from whom they obtained patients by referral.

119.    These law firms represented individuals who claimed to have been involved in motor vehicle accidents with drivers insured by Allstate.

120.    The law firms then sent their clients to Wellness Pain because Wellness Pain agreed to (and did in fact) generate charges regardless of the patients' actual injuries (if any), which

charges were used to increase the perceived value of insurance claims and extract higher payments from Allstate.

121.    The scheme perpetrated by the defendants and their conspirators was intended to, and did in fact, target Allstate pursuant to Texas laws that subject insurers to substantial liability if they reject insurance claims based on alleged bodily injury.

122.    Because the defendants' bills and records were intended to appear valid on their face, and because Allstate would face substantial liability for rejecting a valid demand, the defendants knew that they would induce Allstate to make substantial payments without the opportunity to conduct meaningful investigation to discover the fraud discussed herein.

123.    Once patients had been referred to Wellness Pain, these patients were further referred to Midtown Surgical for unnecessary surgical pain management procedures, which most frequently involved the administration of fraudulent and medically unnecessary epidural steroid injections ("ESIs").

124.    The defendants utilized a predetermined protocol of treatment (discussed *infra*) through which all patients were prescribed highly similar tests, treatments, and services that were designed to maximize the amount of bills submitted to Allstate.

125.    This predetermined protocol did not take into consideration the individual patient's medical needs, injuries, or comorbidities, but instead was designed to generate charges as quickly as possible regardless of clinical justification.

126.    Such conduct is not only prohibited by Texas law, but is also dangerous to the patients who were subjected to clinically unwarranted tests, treatments, prescriptions, and referrals.

C.     <u>UNLAWFUL LAY CONTROL OF THE HEALTHCARE CORPORATION DEFENDANTS</u>

127.     Ratcliff maintained an ownership interest in Wellness Pain and Midtown Surgical during the relevant period.

128.     Ratcliff is the sole listed officer/director of Wellness Pain on its corporate documents.[2]

129.     However, Ratcliff's role at Wellness Pain was not limited to providing administrative or managerial services—Ratcliff, in fact, controlled the treatment protocol administered by Wellness Pain, and was directly involved in patient treatment and medical decision-making.

130.     Despite Ratcliff's own specious claims that he is a "nurse,"[3] a review of the Texas Medical Board and Texas Nursing Board's licensure records produce no results for Ratcliff.

131.     In fact, Ratcliff admitted under oath that he never studied nursing or obtained a nursing license.

132.     A true and accurate copy of Ratcliff's testimony on this topic from the trial of Richard Plezia is depicted below:

```
Q   Now, you said that when you -- after you graduated
from -- did -- you got a degree from U of H, right?
A   Correct.  Yes, sir.
Q   Biology -- was it in biology or -- and nursing?
A   Biology.  I wanted to be a nurse, but I never did take the
test for nursing.
```

*USA v. Stern*, 4:19-cr-00450 (S.D. Tex), at ECF No. 407, pp. 73:16-21.

---

[2] Williams was previously a director of Wellness Pain, but was removed from the role after his federal criminal indictment and his subsequent medical license revocation.

[3] Ratcliff's latest business venture, Texas Medical Marijuana Doctors, maintains a website that states: "Our founder, Mr. Ratcliff, is a nurse himself". *See* https://www.texasmedicalmarijuanadoctors.com/about-us.

133.    Further, per his guilty plea testimony, Ratcliff's highest level of education was graduating high school.

134.    A true and accurate copy of Ratcliff's testimony on this topic from his guilty plea hearing is depicted below:

```
THE COURT:  Oh, okay.

And how far did you get in school?

DEFENDANT RATCLIFF:  High school.
```

*Stern*, 19cr450, at ECF No. 191, at p. 15:23-25.

135.    This is contradicted by Ratcliff's sworn trial testimony, wherein he testifies that he graduated college with a degree in nursing.

136.    Still, Ratcliff admits that he never graduated with a degree in nursing or any other healthcare discipline.

137.    It is apparent that Ratcliff is not, in fact, a licensed medical professional, but that he does publicly hold himself out to be one.

138.    Despite Ratcliff's status as an unlicensed layperson, he admitted to meeting with the majority of patients who treated with Wellness Pain. *Id.* at p. 47:7-10.

139.    Patients have also identified Ratcliff as the "doctor" who performed routine examinations at Wellness Pain.

140.    A true and accurate copy of the examination under oath (EUO) testimony of Wellness Pain patient R.L. (claim no. 0680023207) is depicted below:

```
Q.  Okay.  Does the name, Dr. Lamont Ratcliff, ring a
```

```
bell at all?
    A.  Yes.
    Q.  Who was that?
    A.  He a doctor that I seen, too.  But he at the
wellness -- see there's another one at the wellness and --
it's him at the wellness and it's another one.  He a black
dude.
```

EUO testimony of Allstate Claimant R.L. (Claim No. 0680023207), at pp. 37:25, 38:1-13.

141.    Ratcliff also publicly holds himself out as the "director of operations" at Wellness

Pain.



142.    Individuals unlicensed in the practice of medicine are not lawfully permitted to perform medical services on behalf of patients.

143.    To circumvent Texas law prohibiting the lay practice of medicine, Ratcliff recruited and installed licensed medical professionals, including Azuogu, McBath, and Welsh to misrepresent to the public, including Allstate, that Wellness Pain was properly operated by licensed professionals.

144.    Specifically, Ratcliff contracted with Azuogu's professional association, Azog, to install Azuogu as the nominal "medical director" of Wellness Pain.

20

145.    A true and accurate copy of Azuogu's LinkedIn profile, including a description of the role of Azog, is depicted below:



146.    Ratcliff recruited and installed licensed medical professionals, including McBath and Casimir, to misrepresent to the public, including Allstate, that Midtown Surgical was properly operated by licensed professionals.

147.    The scheme's primary objective was to deliver fraudulent and medically unnecessary treatment to patients, not for the benefit of the patients, but rather, to maximize profits to the defendants.

148.    To achieve this goal, the defendants colluded to unlawfully operate Wellness Pain and Midtown Surgical, submitting false and fraudulent bills and invoices for medical services that were unlawful, unnecessary, exaggerated, and/or were never performed.

149.    The false representations regarding the defendants' services were repeatedly and intentionally placed on bills submitted to insurers such as Allstate for the specific purpose of obtaining payment in violation of Texas law.

**D.    BILLING FOR SERVICES NOT RENDERED**

150.    Wellness Pain and Midtown Surgical regularly billed for services, treatments, and testing that were never actually rendered to the patients herein.

151.    Wellness Pain submitted a significant amount of billing to Allstate for services purportedly performed by Azuogu.

152.    These services included initial and follow-up evaluations (billed using codes indicating "complex" decision making or extensive face-to-face contact), physical therapy services, and ESIs.

153.    ESI procedures were purportedly performed by Azuogu at Townsen Memorial Surgery Center, at 10005 South Main Street, Houston, Texas 77025.

154.    In late 2020, Azuogu was approached by an investigator with the Texas Department of Insurance, who alerted him to the fact that Wellness Pain was affixing Azuogu's signature to medical records and billing without Azuogu's knowledge or consent.

155.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

```
 5        Q.   Okay.  So -- and just to kind of restate what
 6   you were just telling me -- but tell me if I'm -- if
 7   I'm stating it incorrectly -- it sounds like, the first
 8   time that the investigator showed you information, part
 9   of the information he showed you is that there were
10   records from Wellness Pain & Associates that reflected
11   that you treated and evaluated patients that you did
12   not, yourself, actually treat and evaluate?
13        A.   Correct.
```

Deposition of Kelechi Azuogu, M.D. ("Azuogu Depo.") at p. 15:5-13.

```
 3        Q.   And then subsequently, later on the
 4   investigator came back out, and that's the investigator
 5   from the Texas Department of Insurance.  And he showed
 6   you even more examples of what he had initially shown
 7   you the first time; is that accurate?
 8        A.   Yes.
 9        Q.   Okay.  And the examples -- the additional
10   examples that he showed you, that second visit that he
11   made to you, was it the same kind of issues where your
12   name was being attached to treatment and evaluation and
13   recommendations that you, yourself, had no part of?
14        A.   Yes, and part of the reason is, you know,
15   well, there -- you know, with EMR systems you can --
16   you can electronically sign things.  So, I don't know
17   if the lawyer or, you know, if -- if that's what was
18   going on, where they believed that these were being
19   electronically signed; but there was no EMR system,
20   from what I was aware of.
```

Azuogu Depo. at p. 16:3-20.

156.    Azuogu never treated any personal injury patients at Wellness Pain.

157.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

> 19   Q.   Azog, PA.  So, when Azog, PA contracted with
> 20   Wellness Pain & Associates initially, was the plan for
> 21   you to treat and evaluate patients in person?
> 22   A.   We didn't -- we never had that agreement for,
> 23   for, for personal injury at all.  The plan from the

Azuogu Depo. at p. 21:19-23.

> 3   Q.   Okay.  Did you ever at any point treat or
> 4   evaluate patients in person at Wellness Pain &
> 5   Associates?
> 6   A.   Yes.  For a couple of weeks, I did do
> 7   musculoskeletal evaluations; but it wasn't for personal
> 8   injury.  It was just for acute pain.

Azuogu Depo. at p. 22:3-8.

158.   Azuogu never performed any ESI procedures at Townsen Memorial Surgery Center.

159.   A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

24

```
 9        A.   This is, for sure, fraud because I definitely
10   didn't do an ESI injection.  So --
11        Q.   Okay.
12        A.   The Memorial Surgery center, like, you don't
13   even have to continue that.  So, that's definitely
14   fraud.
15        Q.   Okay.  So, this --
16        A.   Yeah.
17        Q.   This health insurance claim form is
18   fraudulent; is that accurate?
19        A.   Absolutely.
```

Azuogu Depo. at p. 53:9-19.

160.   In fact, Azuogu has never conducted any procedures at Townsen Memorial Surgery Center.

161.   A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

```
20        Q.   Okay.  Have you ever performed any procedures
21   at Townsen Memorial Surgery?
22        A.   No.
```

Azuogu Depo. at p. 53:20-22.

162.   Furthermore, Azuogu has **_never_** performed an ESI in his career.

163.   A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

```
13        A.   I've never done one.
14        Q.   Sorry.  It -- I cut you off.  You said you had
15   never done an ESI before?
16        A.   Never have done an ESI injection before.
17        Q.   Okay.  And that's still true as of today?
18        A.   Correct.
```

Azuogu Depo. at p. 32:13-18.

164.    The Wellness Pain invoices and medical records bearing the signature of Azuogu that were submitted to Allstate were false because they constitute billing for services not rendered.

### i.   Exemplar Claims: Billing for Services Not Rendered

#### 1.   *Claimant S.A. (Claim No. 0642301634)*

165.    Allstate insured S.A. (Claim No. 0642301634) was purportedly involved in a motor vehicle accident on or around September 19, 2021.

166.    On September 20, 2021, S.A. purportedly presented for an initial evaluation at Wellness Pain with Azuogu.

167.    According to Wellness Pain's initial evaluation report, S.A. purportedly complained of bilateral frontal headaches, bilateral neck pain, spastic right shoulder pain, and spastic bilateral upper back pain.

168.    In that same report, Azuogu recommended that S.A. present for physical therapy treatment two (2) times per week for four (4) to six (6) weeks.

169.    A bill was subsequently submitted to Allstate for the treatment provided by Azuogu at Wellness Pain.

170.    According to the Wellness Pain follow-up exam report dated November 3, 2021, S.A. continued to complain of neck pain, and radiating upper extremity pain.

171.    In that same report, it was recommended that S.A. receive a cervical epidural steroid injection (ESI) at C3-C4, as well as continued physical therapy.

172.    A bill was subsequently submitted to Allstate for treatment provided by Azuogu at Wellness Pain.

173.    According to the Wellness Pain Operative Report dated November 4, 2021, and the bill subsequently submitted to Allstate, Azuogu purportedly performed ESI procedures on S.A.

174.    A true and accurate copy of S.A.'s Operative Report is depicted below:



**WELLNESS**
**Pain & Associates**

2101 Crawford St. Suite 214
Houston, TX 77002
Office (713) 524-4803

**OPERATIVE NOTE**

PATIENT NAME:
DOB:                          12/22/1981
DATE OF PROCEDURE:            11/4/2021
SURGEON:                      KELECHI AZUOGU, MD

REFERING PHYSICIAN:          KELECHI AZUOGU, MD

CERVICAL EPIDURAL STEROID INJECTION AT C3 AND C4

175.    According to the Wellness Pain report dated November 18, 2021, despite receiving an injection to the neck, S.A. continued to complain of neck pain without any improvement in pain level.

176.    Despite the ineffectiveness of the initial ESI, Azuogu recommended that S.A. receive a *second* cervical ESI at C3-C4.

177.    The second ESI was purportedly performed on December 2, 2021, by Azuogu.

178.    A true and accurate copy of S.A.'s Operative Report is depicted below:



179.    None of the subsequent Wellness Pain progress reports and evaluations discussed the effectiveness of this ESI.

180.    According to the Wellness Pain follow-up report dated December 8, 2021, S.A. was released from treatment, having reached maximum medical improvement.

181.    Wellness Pain's invoices submitted to Allstate in connection with the ESI procedure purportedly performed on S.A. indicate that the procedure was performed at Townsen Memorial, at 10005 S. Main Street, Houston, Texas.

182.    A true and accurate copy of the invoice submitted by Wellness Pain in connection with this procedure is depicted below:



183.    However, according to S.A., the injections occurred at Wellness Pain's offices, and not an external facility.

184.    A true and accurate copy of S.A.'s EUO testimony regarding their treatment at Wellness Pain is depicted below:

```
    Q    Other than the MRIs and the Wellness Clinic,
did you have to go to any other offices for treatment
related to this injury?
    A    Not that I can recall.  I just can't remember
if I did or didn't, I'm sorry.
    Q    But you got your injections done at the
Wellness Clinic; is that right?
    A    Yes.
```

EUO testimony of Claimant S.A. (Claim No. 0642301634) at p. 40:7-14.

185.    Wellness Pain misrepresented the location where S.A.'s ESI procedures took place.

186.    Wellness Pain also misrepresented the treating provider on all medical records and invoices associated with S.A.

187.    The medical documentation submitted to Allstate reflect that Azuogu was the treating provider for all evaluations and operative procedures performed on behalf of S.A.

188.    However, Azuogu **_never_** treated S.A.

189.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:



Azuogu Depo. at p. 42:8-10.

190.    In fact, Azuogu never treated **_any_** personal injury patients at Wellness Pain.

191.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:



Azuogu Depo. at p. 38:6-17.

192.    Furthermore, Azuogu did not perform the ESI procedures on S.A.

193.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

> Q.   Okay.  And it says:  Patient name, ███████
> █████; date of procedure, 11/4/2021; surgeon,
> Kelechi Azuogu -- all right -- referring physician
> Kelechi Azuogu.
>               Did you perform an ESI on ████████
> on November 4th of 2021?
>   A.   No.  I've never --
>   Q.   Okay.
>   A.   -- performed an ESI injection.

Azuogu Depo. at p. 42:17-25.

194.    In fact, Azuogu had ___never___ performed an ESI in the course of his career.

195.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

> Q.   Okay.  And, so, you didn't put this record
> together or sign it; is that accurate?
>   A.   I, I have never put together a ESI injection
> plan for anybody, ever.

Azuogu Depo. at p. 43:1-4.

196.    Wellness Pain falsely reported that Azuogu rendered treatment to S.A.

197.    In connection with the services purportedly rendered on behalf of S.A., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

198.    The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to S.A.

## 2.   *Claimant J.B. (Claim No. 0591580261)*

199.    Allstate insured J.B. (Claim No. 0591580261) was purportedly involved in a motor vehicle accident on or around July 2, 2020.

200.    On July 6, 2020, J.B. purportedly presented for an initial evaluation at Wellness Pain with Azuogu.

201.    According to Wellness Pain's initial evaluation report, J.B. purportedly complained of neck pain, left shoulder pain, mid back pain, bilateral frontal headaches, and low back pain.

202.    In that same report, Azuogu recommended that J.B. present for physical therapy treatment two (2) times per week for six (6) to eight (8) weeks.

203.    A bill was subsequently submitted to Allstate for the treatment provided by Azuogu at Wellness Pain.

204.    According to the Wellness Pain follow-up exam report dated August 15, 2020, J.B. continued to complain of neck pain, left shoulder and arm pain, headaches, and low back pain.

205.    In that same report, it was recommended that J.B. receive a cervical epidural steroid injection (ESI) at C5-C6, and a lumbar ESI at L4-L5, as well as continued physical therapy.

206.    A bill was subsequently submitted to Allstate for treatment provided by Azuogu at Wellness Pain.

207.    According to the Wellness Pain Operative Report dated August 20, 2020, and the bill subsequently submitted to Allstate, Azuogu purportedly performed a cervical ESI procedure on J.B. at C5-C6.

208.    A true and accurate copy of J.B.'s Operative Report is depicted below:



209.    According to the Wellness Pain Operative Report dated September 21, 2020, and the bill subsequently submitted to Allstate, Azuogu purportedly performed a lumbar ESI procedure on J.B. at L4-L5.

210.    A true and accurate copy of J.B.'s Operative Report is depicted below:

211.    According to the Wellness Pain follow-up report dated September 24, 2020, J.B. was released from treatment, having reached maximum medical improvement.

212.    Wellness Pain misrepresented the fact that these ESIs occurred.

213.    J.B. never received any injections in the course of their treatment with Wellness Pain.

214.    A true and accurate copy of J.B.'s EUO testimony regarding their treatment at Wellness Pain is depicted below:

> Q      And at some point you were referred to go get an injection; is that correct?
> A      An injection?
> Q      Yes, ma'am.
> A      What -- no.

EUO Testimony for Claimant J.B. (Claim No. 0591580261), at p. 38:12-16.

215.    Wellness Pain also misrepresented the treating provider on all medical records and invoices associated with J.B.

216.    The medical documentation submitted to Allstate reflect that Azuogu was the treating provider for all evaluations and operative procedures performed on behalf of J.B.

217.    However, Azuogu ***never*** treated J.B., or any other personal injury patient, at Wellness Pain. *See* Azuogu Depo. at p. 38:6-17, depicted *supra*.

218.    Furthermore, Azuogu did not perform the purported ESI procedures on J.B. *See* Azuogu Depo. at p. 43:1-4, depicted *supra*.

219.    Wellness Pain falsely reported that Azuogu rendered treatment to J.B.

220.    In connection with the services purportedly rendered on behalf of J.B., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

221.    The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to J.B.

### 3.   *Claimant D.M. (Claim No. 0586283079)*

222.    Allstate insured D.M. (Claim No. 0586283079) was purportedly involved in a motor vehicle accident on or around May 12, 2020.

223.    On May 13, 2020, D.M. purportedly presented for an initial evaluation at Wellness Pain with Azuogu.

224.    According to Wellness Pain's initial evaluation report, D.M. purportedly complained of left knee pain, left leg pain, low back pain, mid back pain, and left shoulder pain.

225.    In that same report, Azuogu recommended that D.M. present for physical therapy treatment two (2) times per week for six (6) to eight (8) weeks.

226.    A bill was subsequently submitted to Allstate for the treatment provided by Azuogu at Wellness Pain.

227.    According to the Wellness Pain Operative Report dated September 3, 2020, and the bill subsequently submitted to Allstate, Azuogu purportedly performed a lumbar ESI procedure on D.M. at L5-S1.

228.    A true and accurate copy of D.M.'s Operative Report is depicted below:



229.    According to the Wellness Pain follow-up report dated October 22, 2020, D.M. was released from treatment, having reached maximum medical improvement.

230.    Wellness Pain misrepresented the fact that these ESIs occurred.

231.    Wellness Pain also misrepresented the treating provider on all medical records and invoices associated with D.M.

232.    The medical documentation submitted to Allstate reflect that Azuogu was the treating provider for all evaluations and operative procedures performed on behalf of D.M.

233.    However, Azuogu **_never_** treated D.M., or any other personal injury patient, at Wellness Pain. *See* Azuogu Depo. at p. 38:6-17, depicted *supra.*

234.    Furthermore, Azuogu did not perform the purported ESI procedures on D.M. *See* Azuogu Depo. at p. 43:1-4, depicted *supra.*

235.    Wellness Pain falsely reported that Azuogu rendered treatment to D.M.

236.    In connection with the services purportedly rendered on behalf of D.M., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

237.    The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to D.M.

### 4.   Claimant T.T. (Claim No. 0600642722)

238.    Allstate insured T.T. (Claim No. 0600642722) was purportedly involved in a motor vehicle accident on or around September 18, 2020.

239.    On September 21, 2020, T.T. purportedly presented for an initial evaluation at Wellness Pain with Azuogu.

240.    According to Wellness Pain's initial evaluation report, T.T. purportedly complained of bilateral low back pain, and bilateral mid back pain.

241.    In that same report, Azuogu recommended that T.T. present for physical therapy treatment two (2) times per week for six (6) weeks.

242.    A bill was subsequently submitted to Allstate for the treatment provided by Azuogu at Wellness Pain.

243.    According to the Wellness Pain follow-up exam report dated October 28, 2020, T.T. continued to complain of radiating low back pain.

244.    In that same report, it was recommended that T.T. receive a lumbar epidural steroid injection (ESI) at L4-L5, as well as continued physical therapy.

245.    A bill was subsequently submitted to Allstate for treatment provided by Azuogu at Wellness Pain.

246.    According to the Wellness Pain Operative Report dated November 10, 2020, and the bill subsequently submitted to Allstate, Azuogu purportedly performed the lumbar ESI procedure on T.T.

247.    A true and accurate copy of T.T.'s Operative Report is depicted below:



**WELLNESS**
**Pain & Associates**

2101 Crawford St. Suite 214
Houston, TX 77002
Office (713) 524-4803

**OPERATIVE NOTE**

PATIENT NAME:
DOB:                        1/21/1982
DATE OF PROCEDURE:          11/10/2020
SURGEON:                    DR. KELECHI AZUOGU, MD

REFERING PHYSICIAN:         KELECHI AZUOGU, MD

LUMBAR EPIDURAL STEROID INJECTION WITH
LOCAL ANESTHETIC AND STEROIDS AT L4-L5

248.    According to the Wellness Pain report dated November 12, 2020, despite receiving an injection to the lumbar spine, T.T. continued to complain of low back pain without any significant improvement in pain level.

249.    Azuogu never discussed the effectiveness (or lack thereof) of this ESI at any evaluation.

250.    According to the Wellness Pain follow-up report dated January 28, 2021, T.T. was released from treatment, having reached maximum medical improvement.

251.    Wellness Pain also misrepresented the treating provider on all medical records and invoices associated with T.T.

252.    The medical documentation submitted to Allstate reflects that Azuogu was the treating provider for all evaluations and operative procedures performed on behalf of T.T.

253.    However, Azuogu never treated ___any___ personal injury patients at Wellness Pain, and had never signed any medical documentation on behalf of Wellness Pain. *See* Azuogu Depo. at p. 38:6-17, depicted *supra*.

254.    Furthermore, Azuogu did not perform the ESI procedures on T.T., as Azuogu has ___never___ performed an ESI in the course of his career. *See* Azuogu Depo. at p. 43:1-4, depicted *supra*.

38

255. Wellness Pain falsely reported that Azuogu rendered treatment to T.T.

256. In connection with the services purportedly rendered on behalf of T.T., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

257. The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to T.T.

**5. *Claimant J.K. (Claim No. 0688768027)***

258. Allstate insured J.K. (Claim No. 0688768027) was purportedly involved in a motor vehicle accident on or around October 16, 2022.

259. On October 24, 2022, J.K. purportedly presented for an initial evaluation at Wellness Pain with McBath.

260. According to the Wellness Pain initial evaluation report submitted to Allstate, J.K. purportedly complained of infrequent neck pain, infrequent lower back pain, and infrequent bilateral wrist pain.

261. In that same report, McBath recommended that J.K. present for physical therapy treatment two (2) times per week for four (4) to six (6) weeks.

262. This physical therapy purportedly consisted of: hot packs (CPT Code 97010), electro-magnetic stimulation (CPT Code 97014), massage therapy (CPT Code 97124), and therapeutic exercises (CPT Code 97150).

263. Several bills were subsequently submitted to Allstate for evaluation and physical therapy services performed by McBath at Wellness Pain.

264.    Wellness Pain reported that J.K. consistently received treatment at least two (2) times per week from October 24, 2022, to December 16, 2022.

265.    However, J.K. was unable to recall whether he had visited Wellness Pain more than one (1) time.

266.    A true and accurate copy of J.K.'s EUO testimony regarding their treatment at Wellness Pain is depicted below:

> **Q.**  Okay.  Well, let me ask you this:  I'm just trying to jog your memory.  Did you go one time to Wellness Clinic or more than one time?
>
> **A.**  I don't -- I don't recall.

EUO Testimony for Claimant J.K. (Claim No. 0688768027), at p. 35:20-23.

267.    J.K., in fact, revealed that he could not recall Wellness Pain at all, and was unsure where it was located or how he got there.

268.    A true and accurate copy of J.K.'s EUO testimony regarding their treatment at Wellness Pain is depicted below:

> **Q.**  Okay.  So Wellness Clinic.  Every time you went to Wellness Clinic, was it -- was it your daughter Andrea that took you?
>
> **A.**  Really, I don't recall this Wellness Clinic. Where is it located?

EUO Testimony for Claimant J.K. (Claim No. 0688768027), at p. 36:21-25.

269.    Furthermore, the only treatment that J.K. received at Wellness Pain was therapeutic exercise using a bike or treadmill.

270.     J.K. explicitly denied receiving massage therapy, and did not recall receiving hot packs or electric stimulation.

271.     A true and accurate copy of J.K.'s EUO testimony regarding their treatment at Wellness Pain is depicted below:

> **Q.**   Whenever you were there did they make you do any type of stretching exercises, bending, twisting, anything like that?
>
> **A.**   No, no.
>
> **Q.**   Do you remember if they gave you any massages, you know, somebody rubbed around on your back or neck or any part of your body?
>
> **A.**   No.
>
> **Q.**   So the only thing you remember is possibly them putting you on a bicycle or a treadmill?
>
> **A.**   Right.

EUO Testimony for Claimant J.K. (Claim No. 0688768027), at p. 40:2-12.

272.     Despite this, such treatment was reported at virtually every appointment J.K. purportedly attended at Wellness Pain.

273.     Wellness Pain falsely reported the circumstances under which treatment was rendered to J.K.

274.     In connection with the services purportedly rendered on behalf of J.K., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

275.     The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to J.K.

### 6.   *Claimant T.D. (Claim No. 0691773576)*

276.   Allstate insured T.D. (Claim No. 0691773576) was purportedly involved in a motor vehicle accident on or around November 9, 2022.

277.   On November 11, 2022, T.D. purportedly presented for an initial evaluation at Wellness Pain with McBath.

278.   According to the Wellness Pain initial evaluation report submitted to Allstate, T.D. purportedly complained of left knee pain, low back pain, and neck pain.

279.   In that same report, McBath recommended that T.D. present for physical therapy treatment two (2) times per week for four (4) to six (6) weeks.

280.   McBath further recommended that T.D. receive an interlaminar steroid injection to the lumbar spine at L5-S1, and an interlaminar steroid injection to the cervical spine at C5-C6.

281.   A bill was subsequently submitted to Allstate for treatment provided by McBath at Wellness Pain.

282.   According to the Operative Report dated December 10, 2022, and submitted to Allstate by Midtown Surgical, the lumbar ESI was purportedly performed by Casimir at 10694 Jones Road, Houston, Texas.

283.   According to the Operative Report dated January 14, 2023, and submitted to Allstate by Midtown Surgical, the cervical ESI was also purportedly performed by Casimir at 10694 Jones Road, Houston, Texas.

284.   T.D. confirmed that they received injections at Midtown Surgical—however, they were unable to recall several details relating to the purported services.

285.   Specifically, T.D. could not recall the doctor who performed the injection.

286.   A true and accurate copy of T.D.'s EUO testimony on this topic is depicted below:

> Q. Okay. I'll ask you a little bit more about that, but was there anywhere else besides -- well, actually, let me make this even simpler. The injections that you received, where did you have them performed?
>
> A. I had them where?
>
> Q. Yes. Like what location. Yeah, like what facility.
>
> A. Midtown. I want to say it's like a Midtown --
>
> Q. Midtown Surgical? I'm sorry, I didn't mean to cut you off.
>
> A. Yes. Yes.
>
> Q. Okay. So the court reporter doesn't get mad at me, it was Midtown Surgical Group?
>
> A. Correct.
>
> Q. Okay. And that was -- do you remember the

> doctor that performed the injections?
>
> A. No, I'm sorry, I don't.

EUO Testimony for Claimant T.D. (Claim No. 0691773576), at pp. 72:11-25, 73:1-2.

287.    T.D. was also unable to recall whether someone from Wellness Pain had recommended they undergo the injection procedure, and if so, who had recommended it.

288.    A true and accurate copy of T.D.'s EUO testimony on this topic is depicted below:

> Q. Okay. So going back to the injections at Midtown Surgical Group, was that a place that somebody at Wellness Pain specifically referred you to?
>
> A. I don't know if anyone referred me there. A lot of my places was like Google search.

EUO Testimony for Claimant T.D. (Claim No. 0691773576), at p. 76:4-8.

289. T.D. was also unable to recognize the building where Midtown Surgical is purportedly located.

290. A true and accurate copy of T.D.'s EUO testimony on this topic is depicted below:

```
Q.   Does this building look familiar?
A.   I don't know.  Is it a building in Houston?  I
don't know.
Q.   Yes, it's -- it's one of the places you may
have gone.  One of the addresses for the -- of where you
may have gone for those injections.
     But that doesn't ring any bells?
A.   No, I don't -- I don't remember.  I'm sorry.
Q.   That's okay.  What about this one?  Is this
building that I'm showing you right now where you went
to get injections?
A.   Again, I don't remember.
```

EUO Testimony for Claimant T.D. (Claim No. 0691773576), at p. 77:9-20.

291. Wellness Pain and Midtown Surgical falsely reported the circumstances under which treatment was rendered to T.D.

292. In connection with the services purportedly rendered on behalf of T.D., the defendants, through Wellness Pain and Midtown Surgical, submitted false medical documentation to Allstate through the U.S. Mail.

293. The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain and Midtown Surgical engaged in fraudulent billing practices by billing for services that were never rendered to T.D.

### 7. *Claimant K.S. (Claim No. 0649401486)*

294.     Allstate insured K.S. (Claim No. 0649401486) was purportedly involved in a motor vehicle accident on or around November 6, 2021.

295.     On November 16, 2021, K.S. purportedly presented for an initial evaluation at Wellness Pain with McBath.

296.     According to the Wellness Pain initial evaluation report submitted to Allstate, K.S. purportedly complained of bilateral low back pain, bilateral mid back pain, and left hip pain.

297.     On January 31, 2022, it was recommended that K.S. receive a lumbar ESI at L4-L5.

298.     However, the circumstances surrounding K.S.'s purported motor vehicle accident support that the accident was staged.

299.     K.S. reported that she was a pedestrian struck by a motor vehicle in a hit-and-run, and that she was in the process of loading groceries into her vehicle at the time of the collision.

300.     K.S. was, however, unable to recall any specific details regarding the accident.

301.     For example, K.S. was unable to remember where she was located in relation to her vehicle, or whether she was still loading groceries into the vehicle when she was purportedly struck.

302.     A true and accurate copy of K.S.'s EUO testimony on this topic is depicted below:

Q    (BY MR. KENNAMER-CHAPMAN) Okay.  So when she started backing out, were you still loading groceries into your vehicle?

A.   I think -- I think I was.  I think -- again, everything happened so fast.  I don't know if I had just finished and I was pulling the basket out, all I remember is I know I was loading groceries.  And I -- and I -- I don't know, I can't remember.  I would be -- I couldn't give you a truthful answer on if I was still loading or if I was actually moving the basket back to, you know, how you go around and take the basket to the other side.  I can't remember if I was just finishing loading the groceries, or I was still loading.  I can't remember, because again, everything happened so fast.  I'm trying to remember as much as I can.

Q.   Okay.  So I know you don't remember whether you were still loading groceries.  Do you remember whether your back door on the passenger -- or the driver-side your Avalanche was still open when she hit you?

A.   I don't -- I don't remember.

---

Q.    And when -- when she hit you, and I know we've talked about this in general but I haven't asked this specific question, so you may tell me the same thing you told me earlier, but either way I need to ask.  When she hit you, were you positioned on the side of your Avalanche or behind it?

A.   I don't remember.

EUO Testimony for Claimant K.S. (Claim No. 064901486), at pp. 37:7-23, 43:14-20.

303.    The driver of the vehicle that allegedly struck K.S. also contradicted K.S.'s claims that the incident was a hit-and-run.

46

304.    Per K.S., the driver never acknowledged striking K.S. with the vehicle.

305.    A true and accurate copy of K.S.'s EUO testimony on this topic is depicted below:

```
     Q.   So she -- you told her that she hit you and did
she say -- I know she didn't say she was sorry but did she
in any way at that point acknowledge that she had, in fact,
hit you?
     A.   No.  She just said that she didn't see me.  That's
```

EUO Testimony for Claimant K.S. (Claim No. 064901486), at p. 41:9-13.

306.    K.S. also made conflicting claims regarding the appearance of the driver, initially stating that the driver was an elderly woman, and later claiming that K.S. could not see the driver.

307.    A true and accurate copy of K.S.'s EUO testimony on this topic is depicted below:

```
     A.   No.  I couldn't see her.  She was inside her car.
     Q.   The reason I thought you might know what she
looked like, is I thought you told me earlier that she was
an older lady?
     A.   Yeah.  I can see her face, but as far as, you
know, seeing her whole -- you know, I can see -- I can look
```

```
in her face and tell that she was an older lady.
```

EUO Testimony for Claimant K.S. (Claim No. 064901486), at pp. 41:20-25, 42:1.

308.    Additionally, the driver claimed that she never fled the scene, directly contradicting K.S.'s claim that the incident was a hit-and-run.

309.    A true and accurate copy of K.S.'s EUO testimony on this topic is depicted below:

> In any event, my question was, if -- if the other
> driver says that she didn't leave, that she stayed there
> until you had already left, is that not true?
>                MR. SALINAS:  Objection; form.
>                THE WITNESS:  That is definitely not true.

EUO Testimony for Claimant K.S. (Claim No. 064901486), at p. 42:16-20.

310.    K.S. also claimed to have treated with at least two (2) separate providers at Wellness Pain, but was unable to recall *any* of the doctors' names, their roles, or what they looked like.

311.    A true and accurate copy of K.S.'s EUO testimony on this topic is depicted below:

> Q.   Okay.  And do you know what kind of healthcare
> provider you saw on that first visit?  And what I'm getting
> at there, was it like a medical doctor or a physical
> therapist or a chiropractor, do you know?
> A.   I think it was -- I seen a -- we had like three
> doctors in there.  I know I saw two.  I don't know what they
> were. I just know they was -- it was three doctors there
> total and I seen two of them.  Two different doctors.
> Q.   Do you remember either of their names?
> A.   No.

EUO Testimony for Claimant K.S. (Claim No. 064901486), at p. 58:8-17.

312.    The vague allegations raised by K.S. relating to the accident, the contradicting account of the driver, and the lack of any detail in K.S.'s recollection of the treatment with Wellness Pain support that K.S. was not injured in a motor vehicle accident.

48

313.    Having suffered no real injury, any treatment rendered on behalf of K.S. was medically unnecessary.

314.    In connection with the services purportedly rendered on behalf of K.S., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

315.    The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to K.S.

### 8.  *Claimant H.J. (Claim No. 0699205001)*

316.    Allstate insured H.J. (Claim No. 0699205001) was purportedly involved in a motor vehicle accident on or around November 5, 2022.

317.    On November 7, 2022, H.J. purportedly presented for an initial evaluation at Wellness Pain with McBath.

318.    According to Wellness Pain's initial evaluation report, H.J. purportedly complained of neck pain and right shoulder pain.

319.    In that same report, Azuogu recommended that H.J. present for physical therapy treatment two (2) times per week for four (4) to six (6) weeks.

320.    The recommended physical therapy was carried out at Wellness Pain, and the associated report is signed by McBath.

321.    A true and accurate copy of the treatment, care plan, and signature on the November 7, 2022 evaluation report is depicted below:

**ASSESSMENT/CURRENT TREATMENT:**

**Today's Modalities & Procedures:** These were the procedures that were performed today: Cervical region treatment consisted of hot packs (97010), and EMS (97014). Other modalities included hot packs (97010), and EMS (97014) to the Right Shoulder. The above was for the purpose of decreasing pain, decreasing swelling and inflammation, decreasing spasms, increasing range of motion, increasing strength and increasing function.

**FUTURE CARE PLAN:**

**Future Treatment Plan:** Our recommended future care plan for this patient consists of ▮▮▮▮▮ was recommended physical theraapy 2 times a week,4-6 weeks. Special studies of Cervical spine and right shoulder. Follow up within 2 weeks of results. Apply hot/cold pack to PRN basis.

Dr. J Mark McBath, M.D.
(Electronically signed by)

322.     A bill was subsequently submitted to Allstate for the treatment provided by McBath at Wellness Pain.

323.     This bill also reflected that care was rendered by McBath.

324.     There is no record of any licensed physical therapist being on staff at Wellness Pain.

325.     According to the Wellness Pain follow-up evaluation report dated December 1, 2022, McBath recommended that H.J. present for a cervical ESI at C3-C4.

326.     In the same report, McBath recommended continued physical therapy at Wellness Pain.

327.     According to the Midtown Surgical Procedure Report dated December 10, 2022, and the bill subsequently submitted to Allstate, Casimir purportedly performed the recommended cervical ESI procedure on H.J. at C3-C4.

328.     A true and accurate copy of H.J.'s Procedure Report is depicted below:



329.    The December 10, 2022 Procedure Report is not physically signed or dated by Casimir.

330.    A true and accurate copy of the signature line of H.J.'s Procedure Report is depicted below:



331.    In connection with the services purportedly rendered on behalf of H.J., the defendants, through Wellness Pain and Midtown Surgical, submitted false medical documentation to Allstate through the U.S. Mail.

332.    The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain and Midtown Surgical engaged in fraudulent billing practices by billing for services that were never rendered to H.J.

### 9.   *Claimant C.B. (Claim No. 0636376485)*

333.    Allstate insured C.B. (Claim No. 0636376485) was purportedly involved in a motor vehicle accident on or around August 9, 2021.

334.    On the same date, August 9, 2021, C.B. purportedly presented for an initial evaluation at Wellness Pain with Azuogu.

335.    According to Wellness Pain's initial evaluation report, C.B. purportedly complained of bilateral low back pain, left shoulder pain, and bilateral neck pain.

336.    In that same report, Azuogu recommended that C.B. present for physical therapy treatment two (2) times per week for four (4) weeks.

337.    The recommended physical therapy was carried out at Wellness Pain, and the associated report is signed by Azuogu.

338.    A true and accurate copy of the treatment, care plan, and signature on the August 9, 2021 evaluation report is depicted below:



**ASSESSMENT/TREATMENT:**
**Today's Modalities & Procedures:** Following were the modalities used and/or recommended today: The modalities performed on the cervical region consisted of hot packs (97010), EMS (97014), and massage therapy (97124). Lumbosacral region treatment consisted of hot packs (97010), EMS (97014), and massage therapy (97124). Other treatment consisted of hot packs (97010), EMS (97014), and massage therapy (97124) to the left shoulder. The above was for the purpose of decreasing pain, decreasing spasms, increasing range of motion, increasing strength and increasing flexibility.

**FUTURE CARE PLAN:**
**Future Treatment Plan:** Our recommended future care plan for this patient consists of Initiate therapy 2x's a week for 4 weeks.
Recommended MRI Lumbar and Cervical Spine.
Patient needs to follow up once reports are available.

Electronically Signed by: Dr. Kelechi Azuogu, MD

339.    A bill was subsequently submitted to Allstate for the treatment provided by Azuogu at Wellness Pain.

340.    Wellness Pain misrepresented the treating provider on all medical records and invoices associated with C.B.

341.    The medical documentation submitted to Allstate reflect that Azuogu was the treating provider for all evaluations and physical therapy procedures performed on behalf of C.B.

342.    However, Azuogu ***never*** treated C.B., or any other personal injury patient, at Wellness Pain. *See* Azuogu Depo. at p. 38:6-17, depicted *supra.*

343.    Wellness Pain falsely reported that Azuogu rendered treatment to C.B.

344.    In connection with the services purportedly rendered on behalf of C.B., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

345.    The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to C.B.

### 10. *Claimant C.J. (Claim No. 0605688324)*

346.    Allstate insured C.J. (Claim No. 0605688324) was purportedly involved in a motor vehicle accident on or around November 3, 2020.

347.    On November 6, 2020, C.J. purportedly presented for an initial evaluation at Wellness Pain with Azuogu.

348.    According to Wellness Pain's initial evaluation report, C.J. purportedly complained of low back pain radiating to the right leg, bilateral mid back pain, bilateral neck pain, numbness and pain in the right shoulder, numbness and pain in the right arm, and right leg pain.

349. In that same report, Azuogu recommended that C.J. present for physical therapy treatment two (2) times per week for four (4) to six (6) weeks.

350. The recommended physical therapy was carried out at Wellness Pain, and the associated report is signed by Azuogu.

351. A true and accurate copy of the treatment, care plan, and signature on the August 9, 2021 evaluation report is depicted below:

**ASSESSMENT/CURRENT TREATMENT:**
**Today's Modalities & Procedures:** Today's procedures included: Thoracic region modalities consisted of hot packs (97010), EMS (97014), and therapeutic exercises (97150) (2 or more individuals). Lumbosacral region treatment consisted of hot packs (97010), EMS (97014), and therapeutic exercises (97150) (2 or more individuals). The above was for the purpose of decreasing pain, decreasing spasms, increasing range of motion, increasing the ability to perform normal activities of daily living, increasing strength and increasing flexibility.

**FUTURE CARE PLAN:**
**Future Treatment Plan:** [redacted] future care plan includes start treatment 2 times a week for 4-6 weeks. Prescription: Lisinopril, Tylenol and Flexeril. Apply Biofreeze BID PRN. Special Studies: MRI of the Cervical and Lumbar Spine. FU when results are available.

Electronically Signed by: Dr. Kelechi Azuogu, MD

352. A bill was subsequently submitted to Allstate for the treatment provided by Azuogu at Wellness Pain.

353. Wellness Pain misrepresented the treating provider on all medical records and invoices associated with C.J.

354. The medical documentation submitted to Allstate reflects that Azuogu was the treating provider for all evaluations and physical therapy procedures performed on behalf of C.J.

355.    However, Azuogu **_never_** treated C.J., or any other personal injury patient, at Wellness Pain. *See* Azuogu Depo. at p. 38:6-17, depicted *supra.*

356.    Wellness Pain falsely reported that Azuogu rendered treatment to C.J.

357.    In connection with the services purportedly rendered on behalf of C.J., the defendants, through Wellness Pain, submitted false medical documentation to Allstate through the U.S. Mail.

358.    The documentation submitted to Allstate by the defendants demonstrates that Wellness Pain engaged in fraudulent billing practices by billing for services that were never rendered to C.J.

### E.    UNLICENSED BILLING

#### i.    Midtown Surgical Group Corp.

359.    Midtown Surgical held itself out as an ambulatory surgical facility, where patients of Wellness Pain were referred for ESI procedures.

360.    The ESIs billed for by Midtown Surgical were purportedly performed at 10694 Jones Road, in Houston, Texas.

361.    A chart detailing all billing submitted by Midtown Surgical representing that services were performed at 10694 Jones Road is attached hereto at **Exhibit 3**.

362.    However, a review of the ambulatory surgery centers registered under the Regulatory Services Division of the Texas Health & Human Services Commission reflects **_no_** license for a facility at 10694 Jones Road.

363.    Per the Texas Health & Safety Code, all ambulatory surgery centers operating within the State of Texas must be appropriately licensed. *See* Tex. Health & Safety Code § 243.003(a).

364.    Midtown Surgical does not actually operate from a licensed surgical center.

365.    As a result of these misrepresentations, such services are unlawful.

### ii.   **Wellness Pain & Associates, Inc.**

366.    Under Texas law, it is impermissible for a person to practice physical therapy without a physical therapist license. *See* Tex. Occ. Code § 453.005, 453.201.

367.    A person is considered to be practicing physical therapy if: (1) the person "performs, offers to perform, or attempts to perform physical therapy; or (2) publicly professes to be or holds the person out to be a physical therapist or as providing physical therapy." Tex. Occ. Code § 453.201(c).

368.    It is unlawful for a non-physical therapist to use the words "physical therapy" in connection with that person's business activity. *See* Tex. Occ. Code § 453.201(d)(1).

369.    On information and belief, Wellness Pain has no licensed physical therapist on staff.

370.    None of the billing submitted by Wellness Pain bears the name of a licensed physical therapist.

371.    In fact, a significant portion of such services were performed by or at the direction of Ratcliff, an unlicensed layperson.

372.    Ratcliff initially incorporated Wellness Pain under the name "21st Century Physical Therapy," and intended it to be a "physical therapy clinic that treated car accident patients." *Stern*, 19cr450, at ECF No. 407, p. 29:12-13.

373.    Ratcliff subsequently changed the business name upon realizing that holding Wellness Pain out as a physical therapy entity when it was not controlled by a physical therapist was unlawful.

374.     A true and accurate copy of Ratcliff's testimony on this topic from the trial of Richard Plezia is depicted below:

```
Q   Is that what it's called today?

A   Wellness Pain & Associates.

Q   All right.  Why did -- why have you changed names so many
times?

A   Initially, 21st century, we found out that you cannot put
physical therapy in the name without having a physical therapist
on board.  So that's what's changed it from there.

    Gulf Coast Management, we changed it to Wellness Pain &
Associates.  That way we can refer out to other physicians and
bring other physicians under the umbrella.

Q   All right.  And you handle physical therapy, chiropractic
services, and you send people out for MRIs?

A   Correct.
```

*Stern*, 19cr450, at ECF No. 407, p. 76:14-22.

375.     However, Ratcliff and his associates continued to provide physical therapy services through Wellness Pain, regardless of these restrictions.

F.     **FORGED AND FRAUDULENT MEDICAL REPORTS AND INVOICES**

376.     Wellness Pain submitted medical reports and invoices bearing forged and/or fraudulent signatures of licensed medical professionals.

377.     As discussed above, Azuogu never treated any of the personal injury patients who presented at Wellness Pain, despite the associated medical reports and invoices bearing his signature.

378.     Azuogu, in fact, never treated ***any*** personal injury patients at Wellness Pain.

57

379.   Furthermore, Azuogu never signed _**any**_ document on behalf of Wellness Pain.

380.   A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

```
6          Q.   Okay.
7          A.   Because I've never electronically signed
8       anything from Wellness Pain & Associates.
```

Azuogu Depo. at p. 34:6-8.

381.   According to Azuogu, no legitimate doctor would report a procedure (such as an ESI) under another provider's name.

382.   A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

```
11         A.   -- for, for this type of thing, I believe
12      that, first of all, no physician is going to do an ESI
13      injection and then give credit to another physician if
14      they have a normal license.  So, this, to me -- if it
15      were me evaluating it, to me, this A███████ person
16      probably didn't receive an ESI injection.
```

Azuogu Depo. at p. 43:11-16.

383.   The invoices and medical records bearing the signature of Azuogu are fraudulent, forged, and materially misrepresented the services performed on behalf of Allstate claimants.

384.     Moreover, Midtown Surgical submitted bills to Allstate for ESIs using Casimir's name.

385.     A true and accurate copy of an example invoice submitted to Allstate by Midtown Surgical for services purportedly provided to Claimant R.L. (Claim No. 0680023207) is depicted below:



386.     However, the reports for Midtown Surgical bear a signature that does not match Casimir's known signature.

387.     A true and accurate image of Casimir's signature, as it appears on a Procedure Report for Allstate Claimant K.S. (Claim No. 0686625575), for services purportedly rendered at Midtown Surgical, is included below:

388.     The signature on Midtown Surgical's Procedure Report does not match Casimir's signature on documents submitted by his pain management entity, Innovo Physician Services.

389.    A true and accurate image of Casimir's signature, as it appears on an Operative Report for Allstate Claimant R.S. (Claim No. 0712365345), for services purportedly rendered at Innovo Physician Services, is included below:



390.    The signatures on the reports and invoices of Midtown Surgical are fraudulent and forged.

391.    The invoices and medical records bearing the signature of Casimir at Midtown Surgical are fraudulent and contain material misrepresentations as to the nature of the services rendered to Allstate Claimants.

### G.    FRAUDULENT BILLING FOR SERVICES BY UNSUPERVISED NURSE PRACTITIONERS

392.    In Texas, nurse practitioners are required to be supervised by a licensed physician.

393.    Supervision does *not* require the constant physical presence of the supervising physician, "but includes a situation where a supervising physician and the person being supervised are, or can easily be, in contact with one another by radio, telephone, or another telecommunication device." 22 Tex. Admin. Code § 185.2.

394.    Supervision is considered sufficient where the physician:

(1) is responsible for the formulation or approval of the physician's order, standing medical order, standing delegation order, or other order or protocol and periodically reviews the order or protocol and the services provided to a patient under the order or protocol;

(2) has established a physician-patient relationship with each patient who is provided drug therapy management by a delegated pharmacist;

(3) is geographically located so as to be able to be physically present daily to provide medical care and supervision;

(4) receives as appropriate, a periodic status report on each patient, including any problem or complication encountered; and

(5) is available through direct telecommunication for consultation, assistance, and direction.

Tex. Occ. Code § 157.101(c).

395. Azog was purportedly contracted by Wellness Pain to supervise the nurse practitioner, Welsh.

396. A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

> So, when you worked -- or when -- I mean -- use the proper phrasing. When your company contracted with Wellness Pain & Associates, the name of your company at that time was what again?
>
> A.   Azog, PA.
>
> Q.   Azog, PA. So, when Azog, PA contracted with Wellness Pain & Associates initially, was the plan for you to treat and evaluate patients in person?
>
> A.   We didn't -- we never had that agreement for, for, for personal injury at all. The plan from the beginning -- because Tamara, the nurse practitioner, is the reason why I even started working there -- was

> to -- for her to see the personal injury clients and for me to supervise her.

Azuogu Depo. at pp. 21:14-25, 22:1-2.

397. However, Azuogu purportedly supervised only ten (10) to twenty (20) percent of patient examinations.

398. A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

> And people have varying degrees of how
> they submit their narratives to the companies.  Some
> people just write "physical exam," or they write their
> H&P.  Right.  I will supervise at least 10 percent of
> those, or 20 percent, if I -- depending on how familiar
> I am with the person.  And then if -- you know, I
> haven't really had an issue with any of those type of
> things, but what he showed me was that I was a treating
> physician and that I also recommended, you know,
> imaging and that I also referred a person or people to
> do ESI injections and I was the person that did the ESI
> injections, just something that just doesn't even make
> any type of sense at all.

Azuogu Depo. at p. 14:2-14.

399.    In fact, Azuogu entered agreements with healthcare facilities through Azog as an independent contractor with the intent to skirt Texas regulations prohibiting the corporate practice of medicine.

400.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

```
a lot of times when you're -- as a physician, people
want to -- want to hire me, but corporate practice of
medicine type issues with -- in Texas, you know, I, I
can't be an employee of them because I don't want to be
influenced by, by that.  So, that's the reason why I
had the company that I had.
              It gives them a way to, to provide
medical services at their -- at their practice, but
it's just -- I believe they were doing something
outside the scope of what was agreed upon.  And
obviously there was fraud involved.
```

Azuogu Depo. at p. 48:1-11.

401.    This is further supported by Azuogu's LinkedIn profile, which advertises Azog as "a team of proven medical professionals, accountants, lawyers that help physicians, nurse practitioners, physician assistants, nurses *and non medical professionals* start or grow their practices."

402.    Azuogu had no other responsibilities at Wellness Pain, and was not responsible for formulating patient treatment protocols.

403.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

> Q.   So, I mean, I just -- right now it sounds like
> the only thing that you -- that Azog, PA, and you were
> contracted to do for Wellness Pain & Associates was
> supervise Ms. Welsh, as you -- as you described; and
> I'm -- what I'm trying to ask you now is simply whether
> there was anything else that you were supposed to be
> doing for Wellness Pain & Associates under that
> contract besides just that peer supervisor --
> supervisory role.
>     A.   No --
>     Q.   Okay.
>     A.   -- per my understanding.  I don't know if
> that's something that he thought I was supposed to be
> doing, but, no.

Azuogu Depo. at p. 31:9-22.

404.    In fact, Azuogu never personally met with or treated any person injury patients at Wellness Pain at all.

405.    A true and accurate copy of Azuogu's testimony on this topic from a deposition conducted by Allstate is depicted below:

> 12      A.   I've never treated, again, for anything -- for
> 13   personal injury, I've never treated anybody there,
> 14   myself, personally.   I supervised --

Azuogu Depo. at p. 38:12-14.

406.    Because Azuogu never, in fact, met with any personal injury patients, and only reviewed a small percentage of patient reports, the nurse practitioner(s) operating under his "supervision" were not appropriately directed.

407. All billing submitted by Wellness Pain to Allstate for services rendered by nurse practitioners is fraudulent because the NPs were not properly supervised pursuant to Texas law.

### H.   FRAUDULENT BILLING FOR FLUOROSCOPIC GUIDANCE

408. Wellness Pain engaged in fraudulent billing when it submitted bills under CPT code 77003 (fluoroscopic guidance).

409. Fluoroscopic guidance is integral to the codes used to techniques such as ESIs, and thus should not be reported separately from such procedures.

410. For example, CPT code 62323, applicable to ESI, specifically states that it is used to report such injections performed "with imaging guidance (ie, fluoroscopy or CT)."

411. Likewise, CPT codes 64490-64495, applicable to facet joint blocks, also specifically state that they are used to report such procedures performed "with imaging guidance (fluoroscopy or CT)."

412. However, as illustrated through the representative examples contained in the chart below, Wellness Pain billed separately for fluoroscopic guidance in connection with procedures that specifically include fluoroscopic guidance in a deliberate attempt to generate fraudulent charges.

| Claimant Initials | Claim No. | Billing Provider | Unbundled CPT Codes | DOS | Charge |
|---|---|---|---|---|---|
| A.M. | 0393656863 | Wellness | 62311 | 05/02/2016 | $3,770.00 |
| A.D. | 0397400193 | Wellness | 62311 | 07/11/2016 | $3,770.00 |
| K.L. | 0407964717 | Wellness | 64483-64484 | 05/16/2016 | $9,540.00 |
| G.S. | 0411532260 | Wellness | 62310 | 05/16/2016 | $3,770.00 |
| N.S. | 0477522536 | Wellness | 62311-62322 | 12/07/2017 | $3,770.00 |
| D.R. | 0490672490 | Wellness | 62310-62311 | 03/29/2018 | $3,770.00 |

| Claimant Initials | Claim No. | Billing Provider | Unbundled CPT Codes | DOS | Charge |
|---|---|---|---|---|---|
| | | | | 04/05/2018 | $3,770.00 |
| B.B. | 0544156144 | Wellness | 62310-62320 | 07/25/2019 | $3,770.00 |
| | | | | 08/20/2019 | $3,770.00 |
| H.H. | 0572982205 | Wellness | 62310-62311 | 02/06/2020 | $3,770.00 |
| | | | | 02/18/2020 | $3,770.00 |
| D.P. | 0577141996 | Wellness | 62310-62311 | 04/10/2020 | $3,770.00 |
| | | | | 04/13/2020 | $3,770.00 |
| D.M. | 0586283079 | Wellness | 62311-62322 | 09/03/2020 | $3,770.00 |
| A.J. | 0608536587 | Wellness | 62310-62322 | 02/08/2021 | $3,770.00 |
| | | | | 02/23/2021 | $3,770.00 |
| T.A. | 0625551395 | Wellness | 62321-62322 | 08/19/2021 | $7,540.00 |
| S.A. | 0642301634 | Wellness | 62321 | 11/04/2021 | $3,770.00 |
| | | | | 12/02/2021 | $3,770.00 |

413.     The charges for fluoroscopic guidance submitted to Allstate are fraudulent.

**I.     PROVISION OF MEDICALLY UNNECESSARY SERVICES**

414.     As a crucial part of this scheme, the Healthcare Corporation Defendants rendered and then sought payment for fraudulent treatment, tests, and services provided to patients.

415.     The defendants' goal was to bill as much as possible, regardless of whether treatment was reasonably necessary to patients' care, recovery, or rehabilitation, in order to generate bills for submission to Allstate.

416.     To maximize their financial gain, the defendants adhered to a predetermined protocol of unnecessary, indiscriminate, and fraudulent treatment and testing, as discussed more fully below.

417.    The defendants' purported treatment violated standards of care for the medical community, as the vast majority of testing, diagnostics, referrals, procedures, and treatment were not medically indicated, and were redundant, excessive, and repeated without any benefit to patients, where they were performed at all.

418.    The American Medical Association defined medical necessity as: "Healthcare services or products that a prudent physician would provide to a patient for the purpose of preventing, diagnosing or treating an illness, injury, disease, or symptoms in a manner that is (a) in accordance, with generally accepted standards of medical practice; (b) clinically appropriate in terms of type, frequency, extent, site, and duration; and (c) not primarily for the economic benefit of the health plans and purchasers or for the convenience of the patient, treating physician, or other health care provider," (Institute of Medicine, Committee on Defining and Revising an Essential Health Benefits Package for Qualified Health Plans (2011)).

419.    The examinations, physical therapy services, and ESIs performed by Wellness Pain and Midtown Surgical were unnecessary and performed, to the extent they were performed at all, solely for the financial benefit of the providers.

420.    The full extent and pattern of the defendants' misrepresentations regarding the lawfulness and necessity of the treatment they billed was not known to Allstate until it undertook the investigation that culminated in the filing of this action, including identification of the defendants' pattern of treatment.

421.    The unnecessary treatment billed by the defendants, discussed more fully below, includes the treatment and patients set out in the charts annexed hereto at **Exhibits 1-3**.

422.     Allstate is not required to pay the defendants for treatment that was medically unnecessary, and is entitled to the return of money it was induced to pay as a result of the defendants' fraud.

423.     None of the facts set out herein are evident within the four corners of the medical records and bills submitted to Allstate.

424.     The pattern of treatment instituted by the defendants invariably commenced with the Allstate claimants presenting at Wellness Pain for an initial evaluation, usually within a day or two of the purported motor vehicle accident.

425.     In fact, claimants occasionally presented for an evaluation on the ***same day*** as the motor vehicle accident.

426.     The initial evaluation reports generated by Wellness Pain and submitted to Allstate for each Allstate claimant are remarkably similar for almost every patient.

427.     These assessments almost always concluded with Wellness Pain reporting an identical plan of care for each patient.

428.     This plan involved a referral for unnecessary physical therapy services at Wellness Pain, and pain management injections at Midtown Surgical.

429.     The performance of invasive procedures, including injections, must be based on legitimate medical necessity.

430.     Rather than basing their referrals for injections on legitimate medical necessity, the defendants pressured patients to undergo multiple injections regardless of symptomology, individual patient presentation, or true medical need.

431.    The defendants pushed injections even when there had not been sufficient time since the patient's accident to permit the normal and expected minor pain and soreness from an accident to resolve, which is contrary to the accepted standard of care.

432.    The defendants' practice of pressuring patients to submit to injections shortly after the claimed accidents, where those injections were performed at all, resulted in injections that were fraudulent and medically unnecessary.

433.    The defendants billed for unnecessary ancillary procedures and services to supplement these routine pain management procedures to create the appearance that they consisted of major surgeries, thereby inflating billing.

434.    The defendants routinely billed for ESIs, which are simple injections of a steroid solution, occasionally performed with contrast dye and fluoroscopy to guide the needle.

435.    The procedure takes only a few minutes, and can and should be performed in a doctor's office with a local anesthetic absent unique circumstances that must be documented in a patient's record.

436.    The defendants, however, performed ESIs in a very different manner.

437.    The defendants required patients to receive their injections (where they were performed at all) at an ambulatory surgery center.

438.    The incorporation of surgical centers into patients' routine treatment plans was designed to create the appearance that these procedures were more complicated than, in reality, they were.

439.    ESIs are intended to be diagnostic and therapeutic, and are not intended to function as a permanent cure for back or neck pain.

440.     Typically, ESIs provide patients with temporary relief, usually lasting for several months, allowing time for the patient to recover on their own and participate in conservative treatments, such as physical therapy.

441.     It is not appropriate to repeat ESIs if a patient does not respond sufficiently to the first or previous injections.

442.     The defendants routinely ordered and billed for ESIs in a predetermined series that did not evaluate whether the first injections were successful.

443.     It is also inappropriate to perform numerous ESIs in quick succession because there are risks associated with the introduction of steroids, multiple procedures can cut short the expected time of relief for an ESI, and subsequent injections eliminate a physician's ability to diagnostically assess the usefulness and duration of relief from the earlier injections.

**J.   UNLAWFUL SOLICITATION OF PATIENTS**

444.     Wellness Pain unlawfully solicited patients by offering financial compensation in exchange for treatment and referrals.

445.     Under Texas law, it is unlawful for: (1) a person to "solicit[] or receive[], directly or indirectly, overtly or covertly, any remuneration, including any kickback, bribe, or rebate, in cash or in kind for referring an individual to a person for the furnishing of, any item or service for which payment may be made, in whole or in part, under the Medicaid or other HHS program;" (2) "a physician [to] refer[] a Medicaid or other HHS program recipient to an entity with which the physician has a financial relationship for the furnishing of designated health services;" and, (3) a person to "fail[] to disclose documentation of financial relationships necessary to establish compliance with [state and federal law]." 1 Tex. Admin. Code § 371.1669 (Texas Stark Law).

446.     Ratcliff obtained patients by identifying potentially injured individuals in police accident reports.

447.     Ratcliff paid unlawful bribes to an employee of the Houston Police Department for early access to police accident reports, then contacted the individuals involved.

448.     A true and accurate copy of Ratcliff's testimony on this topic at the trial of Richard Plezia is depicted below:

> **Q**   And so you're basically paying -- illegally paying in order to get them early?
> **A**   Yes.
> **Q**   So what's the benefit of getting the report early?
> **A**   Getting to the client before anyone else gets to the client.
> **Q**   Okay.  And are there -- are there other runners out there who are going to be approaching those clients?
> **A**   Yes.  That's the nature of the business, yes.

*Stern*, 19cr450, at ECF No. 407, p. 43:18-25.

> **Q**   What do you do with the report?
> **A**   We look through the report to see who was not at fault, and then we would approach that person.

*Stern*, 19cr450, at ECF No. 407, p. 44:17-19.

449.     Ratcliff specifically targeted individuals who had no health insurance because he believed individuals with insurance were more "sophisticated."

450.     Per Ratcliff, more "sophisticated" individuals would be more likely to recognize and report Wellness Pain's illegal solicitation.

451.   A true and accurate copy of Ratcliff's testimony on this topic at the trial of Richard Plezia is depicted below:

> Q   Do you approach people who you think already have health insurance?
>
> A   No.
>
> Q   Why not?
>
> A   Generally, people that have health insurance have a level of sophistication where they would probably not go with us for being in the car. They wouldn't go with a stranger for services.
>
> Q   Is it potentially dangerous for you to approach someone who's -- as you say, has a higher level of sophistication?
>
> A   Yes.
>
> Q   Why?
>
> A   Because that person could report us for illegal solicitation.

*Stern*, 19cr450, at ECF No. 407, p. 9-22.

452.   Once these patients started treating at Wellness Pain (if they treated at all), they would be self-referred from Wellness Pain to Midtown Surgical for injection services.

453.   Ratcliff also referred patients to law firms with which Ratcliff maintained a kickback relationship, securing a portion of the settlement payout for Wellness Pain.

454.   Patients of Wellness Pain were not aware of the financial relationship Ratcliff maintained with the law firms accepting referrals from Wellness Pain.

455.   A true and accurate copy of Ratcliff testimony on this topic at the trial of Richard Plezia is depicted below:

> Q   Did you ever inform any of your patients of your
> relationship with Mr. Stern and the kickback payments that you
>
> were getting from Mr. Stern?
> A   No, sir.

*Stern*, 19cr450, at ECF No. 407, pp. 98:24-25, 99:1-2.

456.    Such conduct is improper and unlawful, and any billing submitted to Allstate based on these referral arrangements was fraudulent as a result.

## V.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

457.    Throughout the course of this scheme, Wellness Pain, Midtown Surgical, Azog, Ratcliff, Williams, Casimir, McBath, Azuogu, and Welsh created, prepared, and submitted (or caused to be created, prepared, and submitted) false documentation and intentionally violated the laws of the United States by devising, and intending to devise, schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by placing (or causing to be placed) in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Services, in violation of 18 U.S.C. § 1341 (mail fraud) for the purpose of executing, or attempting, such fraudulent schemes.

458.    Unless otherwise pled to the contrary, all documents, invoices, narrative reports, letters, and requests for payments in connection with the insurance claims referenced throughout the balance of this complaint traveled through the U.S. Mail.

459.    Every automobile insurance claim detailed herein involved at least one use of the U.S. Mail, including the mailing of invoices, narrative reports, and payments, and caused various other mailings in the ordinary course of the claims process.

A.   WELLNESS PAIN & ASSOCIATES, INC. ("WELLNESS PAIN") ENTERPRISE

460.   Each individual defendant, Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog, took part in the creation, operation, and control of Wellness Pain for the purpose of generating fraudulent reports and invoices.

461.   These defendants all attempted to capitalize on an unlawful application of various state and federal laws and regulations to enrich themselves through the submission of fraudulent bills to Allstate for unnecessary and unlawful services, or services that were never performed at all.

462.   Wellness Pain, through the operation and control of Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and Azog, was the means by which the defendants caused Wellness Pain's fraudulent invoices to be submitted to Allstate through the U.S. Mail.

463.   Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and Azog, personally used the U.S. Mail (or caused the U.S. Mail to be used) to further this fraudulent scheme by causing invoices and records from Wellness Pain to be mailed to Allstate and/or counsel for insureds, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

464.   Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog, caused Wellness Pain to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that Wellness Pain mailed a demand for payment (i.e., invoice) to Allstate.

465.   Persons acting under Ratcliff's, Williams', McBath's, Azuogu's, Welsh's, Midtown Surgical's, and/or Azog's direction and control provided unnecessary medical services

to Allstate insureds, and generated fraudulent invoices as a result, which rendered Wellness Pain completely ineligible for reimbursement under state and federal law.

466.    Because Wellness Pain was not lawfully eligible to seek or collect benefit payments under state and federal law, Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog purposely caused Wellness Pain to make a misrepresentation each and every time that Wellness Pain mailed a document to Allstate claiming eligibility for reimbursement.

467.    Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog committed mail fraud through the Wellness Pain enterprise because: (a) Wellness Pain was not lawfully eligible to seek or collect benefit payments; (b) Wellness Pain was caused to seek reimbursement from Allstate even though Wellness Pain was not entitled to such reimbursement; and, (c) Wellness Pain used (or was caused to use) the U.S. Mail to seek reimbursement.

468.    At all relevant times, Ratcliff, Williams, McBath, Azuougu, Welsh, Midtown Surgical, and/or Azog knew that Wellness Pain (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by Wellness Pain.

469.    Allstate estimates that the unlawful operation of the Wellness Pain enterprise generated hundreds of mailings throughout the relevant time period.

470.    A table highlighting the relevant examples of mailings made in furtherance of this scheme is annexed hereto at **Exhibit 4** and incorporated by reference as if set forth in its entirety.

### B.  MIDTOWN SURGICAL GROUP, CORP. ("MIDTOWN SURGICAL") ENTERPRISE

471.    Each individual defendant, Ratcliff, Casimir, McBath, and/or Wellness Pain took part in the operation and control of Midtown Surgical for the purpose of generating fraudulent invoices for Midtown Surgical.

472.    These defendants used Midtown Surgical in order to capitalize on the unlawful application of various state and federal laws and regulations to enrich themselves through the submission of fraudulent bills to Allstate for unnecessary and unlawful services, or services that were never performed at all.

473.    Midtown Surgical, created, operated, and controlled by Ratcliff, Casimir, McBath, and/or Wellness Pain was the company that generated fraudulent reports for services which were the necessary predicate for Midtown Surgical's generation of fraudulent bills to Allstate.

474.    Ratcliff, Casimir, McBath, and Wellness Pain personally used the U.S. Mail (or caused the U.S. Mail to be used) to further this fraudulent scheme by causing invoices from Midtown Surgical to be mailed to Allstate and/or counsel for insureds, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

475.    Ratcliff, Casimir, McBath, and/or Wellness Pain caused Midtown Surgical to falsely certify that Midtown Surgical was, in all respects, eligible to be reimbursed under applicable state and federal law each time that Midtown Surgical mailed a demand for payment (i.e., invoice) to Allstate.

476.    Persons acting under Ratcliff's, Casimir's, McBath's, and/or Wellness Pain's direction and control provided unnecessary healthcare services to Allstate insureds and generated fraudulent invoices as a result, which rendered Midtown Surgical completely ineligible for reimbursement under state and federal law.

477.    Because Midtown Surgical was not lawfully eligible to seek or collect benefit payments under state and federal law, Ratcliff, Casimir, McBath, and/or Wellness Pain purposely caused Midtown Surgical to make a misrepresentation each and every time that Midtown Surgical mailed a document to Allstate claiming eligibility for reimbursement.

478.    Ratcliff, Casimir, McBath, and/or Wellness Pain committed mail fraud through the Midtown Surgical enterprise because: (a) Midtown Surgical was not lawfully eligible to seek or collect benefit payments; (b) Midtown Surgical was caused to seek reimbursement from Allstate even though Midtown Surgical was not entitled to such reimbursement; and, (c) Midtown Surgical used (or was caused to use) the U.S. Mail to seek reimbursement.

479.    At all relevant times, Ratcliff, Casimir, McBath, and/or Wellness Pain knew that Midtown Surgical (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by Midtown Surgical.

480.    Allstate estimates that the unlawful operation of the Midtown Surgical enterprise generated hundreds of mailings throughout the relevant time period.

481.    A table highlighting the relevant examples of mailings made in furtherance of this scheme is annexed hereto at **Exhibit 5** and incorporated by reference as if set forth in its entirety

### C.  AZOG, P.A. ("AZOG") ENTERPRISE

482.    Each individual defendant, Ratcliff, Azuogu, and/or Wellness Pain, took part in the operation and control of Azog for the purpose of generating fraudulent invoices on behalf of Wellness Pain.

483.    These defendants used Azog in order to capitalize on the unlawful application of various state and federal laws and regulations to enrich themselves through the submission of fraudulent bills to Allstate for unnecessary and unlawful services, or services that were never performed at all.

484.    Azog created, operated, and controlled by Ratcliff, Azuogu, and/or Wellness Pain, was the company that generated fraudulent reports for services, which were the necessary predicate for Azog's generation of fraudulent bills to Allstate (through Wellness Pain).

485.    Ratcliff, Azuogu, and Wellness Pain personally used the U.S. Mail (or caused the U.S. Mail to be used) to further this fraudulent scheme by causing invoices from Wellness Pain to be mailed to Allstate and/or counsel for insureds, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

486.    Ratcliff, Azuogu, and/or Wellness Pain caused Wellness Pain to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that Wellness Pain mailed a demand for payment (i.e., invoice) to Allstate.

487.    Persons acting under Ratcliff's, Azuogu's, and/or Wellness Pain's direction and control provided unnecessary healthcare services to Allstate insureds and generated fraudulent invoices as a result, which rendered Wellness Pain completely ineligible for reimbursement under state and federal law.

488.    Because Wellness Pain was not lawfully eligible to seek or collect benefit payments under state and federal law, Ratcliff, Azuogu, and/or Wellness Pain purposely caused Wellness Pain to make a misrepresentation each and every time that Wellness Pain mailed a document to Allstate claiming eligibility for reimbursement.

489. Ratcliff, Azuogu, and/or Wellness Pain committed mail fraud through the Azog enterprise because: (a) Wellness Pain was not lawfully eligible to seek or collect benefit payments; (b) Wellness Pain was caused to seek reimbursement from Allstate even though Wellness Pain was not entitled to such reimbursement; and, (c) Wellness Pain used (or was caused to use) the U.S. Mail to seek reimbursement.

490. At all relevant times, Ratcliff, Azuogu, and/or Wellness Pain knew that Wellness Pain (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by Wellenss Pain.

491. Allstate estimates that the unlawful operation of the Azog enterprise generated hundreds of mailings throughout the relevant time period.

492. A table highlighting the relevant examples of mailings made in furtherance of this scheme is annexed hereto at **Exhibit 4** and incorporated by reference as if set forth in its entirety.

## VI. SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MATERIAL MISREPRESENTATIONS MADE TO AND RELIED UPON BY ALLSTATE

### A. FRAUDULENT CONCEALMENT – WELLNESS PAIN ENTERPRISE

493. At all relevant times during the operation of the Wellness Pain enterprise, Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog purposely caused Wellness Pain to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal laws as a means to induce Allstate to promptly pay charges related to false, fraudulent, and unnecessary medical services purportedly provided to Allstate insureds.

494.    Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog (along with those individuals working under their control) purposely concealed the lack of necessity for the medical services purportedly provided and charged for by Wellness Pain.

495.    Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog (or those working under their direction and control) created and submitted to Allstate (or caused the creation and submission of) records that falsely purported to justify the necessity of the medical services purportedly provided by Wellness Pain to Allstate insureds.

496.    Because Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog were responsible for: (a) directing the fraudulent services purportedly rendered on behalf of Allstate insureds through Wellness Pain; (b) creating, altering, and/or fabricating records submitted to Allstate in support of services purportedly rendered on behalf of Allstate insureds; (c) billing Allstate for the fraudulent medical services purportedly rendered on behalf of Allstate insureds through Wellness Pain; (d) falsely charging for the services with the knowledge that these services were not lawfully reimbursable under applicable laws; and, (e) billing Allstate for services that were, in most instances, never actually provided, Wellness Pain was caused to falsely claim eligibility each and every time that Wellness Pain sought reimbursement from Allstate.

497.    As alleged above, Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog (or those persons working under their control) caused Wellness Pain to create and submit to Allstate claim reimbursement documents and demands for payment relative to services that were: (a) unlawful; (b) unnecessary; (c) fraudulent; and/or, (d) not actually provided.

498.    Such conduct is unlawful, and rendered each such claim fraudulent under applicable state and federal laws.

499.     Many of the false, fraudulent, and unlawful acts, including, among other things, charging for services never actually provided, are not readily evident within the four corners of the documents submitted to Allstate by these defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete claim at issue in this matter.

500.     Thus, every time that Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog (along with those individuals working under their control) caused Wellness Pain to submit reimbursement demands to Allstate, Ratcliff, Williams, McBath, Azuogu, Welsh, Midtown Surgical, and/or Azog (and those individuals working under their control) necessarily certified that Wellness Pain was, in all respects, eligible to be reimbursed under applicable state and federal laws.

501.     The full extent of Ratcliff's, Williams', McBath's, Azuogu's, Midtown Surgical's, and/or Azog's fraudulent and unlawful acts relative to their participation in the Wellness Pain enterprise was not, and could not have been, known to Allstate until shortly before it commenced this action.

**B.  FRAUDULENT CONCEALMENT – MIDTOWN SURGICAL**

502.     At all relevant times during the operation of the Midtown Surgical enterprise, Ratcliff, Casimir, McBath, and/or Wellness Pain purposely caused Midtown Surgical to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal laws as a means to induce Allstate to promptly pay charges related to false, fraudulent, and unnecessary medical services purportedly provided to Allstate insureds.

503.     Ratcliff, Casimir, McBath, and/or Wellness Pain (along with those individuals working under their control) purposely concealed the lack of necessity for the medical services purportedly provided and charged for by Midtown Surgical.

504.     Ratcliff, Casimir, McBath, and/or Wellness Pain (or those working under their direction and control) created and submitted to Allstate (or caused the creation and submission of) records that falsely purported to justify the necessity of the medical services purportedly provided by Midtown Surgical to Allstate insureds.

505.     Because Ratcliff, Casimir, McBath, and/or Wellness Pain were responsible for: (a) directing the fraudulent services purportedly rendered on behalf of Allstate insureds through Midtown Surgical; (b) creating, altering, and/or fabricating records submitted to Allstate in support of services purportedly rendered on behalf of Allstate insureds; (c) billing Allstate for the fraudulent medical services purportedly rendered on behalf of Allstate insureds through Midtown Surgical; (d) falsely charging for the services with the knowledge that these services were not lawfully reimbursable under applicable laws; and, (e) billing Allstate for services that were, in most instances, never actually provided, Midtown Surgical was caused to falsely claim eligibility each and every time that Midtown Surgical sought reimbursement from Allstate.

506.     As alleged above, Ratcliff, Casimir, McBath, and/or Wellness Pain (or those persons working under their control) caused Midtown Surgical to create and submit to Allstate claim reimbursement documents and demands for payment relative to services that were: (a) unlawful; (b) unnecessary; (c) fraudulent; and/or, (d) not actually provided.

507.     Such conduct is unlawful, and rendered each such claim fraudulent under applicable state and federal laws.

508.     Many of the false, fraudulent, and unlawful acts, including, among other things, charging for services never actually provided, are not readily evident within the four corners of the documents submitted to Allstate by these defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete claim at issue in this matter.

82

509.     Thus, every time that Ratcliff, Casimir, McBath, and/or Wellness Pain (along with those individuals working under their control) caused Midtown Surgical to submit reimbursement demands to Allstate, Ratcliff, Casimir, McBath, and/or Wellness Pain (and those individuals working under their control) necessarily certified that Midtown Surgical was, in all respects, eligible to be reimbursed under applicable state and federal laws.

510.     The full extent of Ratcliff's, Casimir's, McBath's, and/or Wellness Pain's fraudulent and unlawful acts relative to their participation in the Midtown Surgical enterprise was not, and could not have been, known to Allstate until shortly before it commenced this action.

### C.  FRAUDULENT CONCEALMENT – AZOG

511.     At all relevant times during the operation of the Azog enterprise, Ratcliff, Azuogu, and/or Wellness Pain purposely caused Wellness Pain to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal laws as a means to induce Allstate to promptly pay charges related to false, fraudulent, and unnecessary medical services purportedly provided to Allstate insureds.

512.     Ratcliff, Azuogu, and/or Wellness Pain (along with those individuals working under their control) purposely concealed the lack of necessity for the medical services purportedly provided and charged for by Wellness Pain.

513.     Ratcliff, Azuogu, and/or Wellness Pain (or those working under their direction and control) created and submitted to Allstate (or caused the creation and submission of) records that falsely purported to justify the necessity of the medical services purportedly provided by Wellness Pain to Allstate insureds.

514.     Because Ratcliff, Azuogu, and/or Wellness Pain were responsible for: (a) directing the fraudulent services purportedly rendered on behalf of Allstate insureds through Wellness Pain;

(b) creating, altering, and/or fabricating records submitted to Allstate in support of services purportedly rendered on behalf of Allstate insureds; (c) billing Allstate for the fraudulent medical services purportedly rendered on behalf of Allstate insureds through Wellness Pain; (d) falsely charging for the services with the knowledge that these services were not lawfully reimbursable under applicable laws; and, (e) billing Allstate for services that were, in most instances, never actually provided, Wellness Pain was caused to falsely claim eligibility each and every time that Wellness Pain sought reimbursement from Allstate.

515.    As alleged above, Ratcliff, Azuogu, and/or Wellness Pain (or those persons working under their control) caused Wellness Pain to create and submit to Allstate claim reimbursement documents and demands for payment relative to services purportedly provided by Wellness Pain that were: (a) unlawful; (b) unnecessary; (c) fraudulent; and/or, (d) not actually provided.

516.    Such conduct is unlawful, and rendered each such claim fraudulent under applicable state and federal laws.

517.    Many of the false, fraudulent, and unlawful acts, including, among other things, charging for services never actually provided, are not readily evident within the four corners of the documents submitted to Allstate by these defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete claim at issue in this matter.

518.    Thus, every time that Ratcliff, Azuogu, and/or Wellness Pain (along with those individuals working under their control) caused Wellness Pain to submit reimbursement demands to Allstate, Ratcliff, Azuogu, and/or Wellness Pain (and those individuals working under their control) necessarily certified that Wellness Pain was, in all respects, eligible to be reimbursed under applicable state and federal laws.

519.    The full extent of Ratcliff's, Azuogu's, and/or Wellness Pain's fraudulent and unlawful acts relative to their participation in the Azog enterprise was not, and could not have been, known to Allstate until shortly before it commenced this action.

## VII.    ALLSTATE'S JUSTIFIABLE RELIANCE

520.    As the defendants did not render lawful and reasonably necessary medical treatment, each bill and accompanying documentation mailed by or on behalf of the defendants to Allstate constitutes a material misrepresentation.

521.    Each claim submitted to Allstate by (or on behalf of) Wellness Pain and Midtown Surgical represented that the defendants were legally eligible to be reimbursed.

522.    The facially valid documents submitted to Allstate by the defendants were designed to, and did in fact, induce Allstate to rely on the documents.

523.    At all relevant times, the defendants concealed from Allstate facts regarding the fact, lawfulness, and medical necessity of treatment and services allegedly provided by them to prevent Allstate from discovering that the claims submitted by and on behalf of the defendants were not compensable under Texas law.

524.    These misrepresentations include submitting false medical documentation, including HICFs, documenting the fact, lawfulness, and necessity of medical treatment and services in order to seek payment from Allstate.

525.    Evidence of the fraudulent scheme detailed in this Complaint was not discovered until after patterns had emerged and Allstate began to investigate the defendants, revealing the true nature and full scope of their fraudulent scheme.

526.     Due to the defendants' material misrepresentations and affirmative acts designed to conceal their fraudulent scheme, Allstate did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

527.     In reliance on and as a result of the defendants' misrepresentations, Allstate paid money to the defendants to its detriment.—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information.

528.     As a result, Allstate has paid in excess of $669,303.42 based upon the defendants' false documentation and invoices.

## VIII.  <u>DAMAGES</u>

529.     The defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law. Although it is not necessary for Allstate to calculate its damages with specificity at this stage of the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for payments wrongfully made to Wellness Pain and Midtown Surgical in connection with claims made under applicable state laws, the exact amount to be determined at trial, including:

(a) Payments made to Wellness Pain & Associates, Inc., totaling at least $131,668.30, the exact amount to be determined at trial. The chart at **<u>Exhibit 6</u>**, incorporated herein as if set forth in its entirety, identifies Allstate's payments to Wellness Pain & Associates, Inc., in connection with claims determined to be false, fraudulent, and not compensable as of the filing of this Complaint.

(b) Monies received by Wellness Pain & Associates, Inc. and Midtown Surgical Group Corp. that were derived directly from Allstate's payments tendered in connection with the settlement of third-party bodily injury claims totaling at least $537,635.12, the exact amount to be determined at trial.  The chart annexed hereto as **<u>Exhibit 7</u>**, identifies the monies attributed to Wellness Pain & Associates, Inc. and Midtown Surgical Group Corp. as a direct result of Allstate's settlement of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

## IX.    CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Wellness Pain Enterprise)
### Against Lamont Ratcliff, Reginald Williams, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Midtown Surgical Group Corp., and Azog, P.A.

530.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1-529 set forth above as if fully set forth herein.

531.    Wellness Pain & Associates, Inc. ("Wellness Pain") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

532.    In connection with each of the claims identified in the within Complaint, Lamont Ratcliff, Reginald Williams, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Midtown Surgical Group Corp., and Azog, P.A. (collectively, the "Count I Defendants") intentionally caused to be prepared and mailed false medical documentation by Wellness Pain, or knew that such false medical documentation would be mailed in the ordinary course of Wellness Pain's business, or should have reasonably foreseen the mailing of such false documentation by Wellness Pain and/or by a personal injury attorney on behalf of a patient of Wellness Pain would occur, in furtherance of the Count I Defendants' scheme to defraud.

533.    The Count I Defendants knew that two (2) or more mailings would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings identified in the chart annexed hereto at **Exhibit 4**.

534.    The Count I Defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Wellness Pain, which they knew would be billed by Wellness Pain,

and submitted to Allstate by Wellness Pain and/or by a personal injury attorney on behalf of a patient of Wellness Pain, in order to collect payment from Allstate.

535.   As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to Wellness Pain for the benefit of the Count I Defendants that would not otherwise have been made.

536.   The Count I Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count I Defendants to continue this unlawful scheme without being detected.

537.   By mailing numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

538.   The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Wellness Pain for the benefit of the Count I Defendants.

539.   The Count I Defendants participated in the conduct of the Wellness Pain enterprise through a pattern of racketeering activities.

540.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

541.   The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

542.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

543.     Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

544.     By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Wellness Pain Enterprise)**
**Against Lamont Ratcliff, Reginald Williams, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Midtown Surgical Group Corp., and Azog, P.A.**

545.     Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

546.     Defendants Lamont Ratcliff, Reginald Williams, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Midtown Surgical Group Corp., and Azog, P.A. (collectively, the "Count II Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Wellness Pain & Associates, Inc. ("Wellness Pain").

547.     The Count II Defendants agreed to further, facilitate, support, and operate the Wellness Pain enterprise.

548.     As such, the Count II Defendants conspired to violate 18 U.S.C. § 1962(c).

549.     The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through Wellness Pain even though Wellness Pain was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count II Defendants.

550.    The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of Wellness Pain, the provision of false, fraudulent, and unnecessary healthcare services to Wellness Pain patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented Wellness Pain's reimbursement eligibility.

551.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) Wellness Pain as a result of the Count II Defendants' unlawful conduct described herein.

552.    By virtue of the Count II Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

### COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
#### (Midtown Surgical Enterprise)
#### Against Lamont Ratcliff, Robert Casimir, M.D., James Mark McBath, M.D., and Wellness Pain & Associates, Inc.

553.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

554.    Midtown Surgical Group Corp. ("Midtown Surgical") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

555.    In connection with each of the claims identified in the within Complaint, Lamont Ratcliff, Robert Casimir, M.D., James Mark McBath, M.D., and Wellness Pain & Associates, Inc. (collectively, the "Count III Defendants") intentionally caused to be prepared and mailed false medical documentation by Midtown Surgical, or knew that such false medical documentation

would be mailed in the ordinary course of Midtown Surgical's business, or should have reasonably foreseen the mailing of such false documentation by Midtown Surgical and/or by a personal injury attorney on behalf of a patient of Midtown Surgical would occur, in furtherance of the Count III Defendants' scheme to defraud.

556.   The Count III Defendants knew that two (2) or more mailings would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings identified in the chart annexed hereto at **Exhibit 5**.

557.   The Count III Defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Midtown Surgical, which they knew would be billed by Midtown Surgical, and submitted to Allstate by Midtown Surgical and/or by a personal injury attorney on behalf of a patient of Midtown Surgical, in order to collect payment from Allstate.

558.   As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to Midtown Surgical for the benefit of the Count III Defendants that would not otherwise have been made.

559.   The Count III Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count III Defendants to continue this unlawful scheme without being detected.

560.   By mailing numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

561.    The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Midtown Surgical for the benefit of the Count III Defendants.

562.    The Count III Defendants participated in the conduct of the Midtown Surgical enterprise through a pattern of racketeering activities.

563.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

564.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

565.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

566.    Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

567.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

### <u>COUNT IV</u>
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Midtown Surgical Enterprise)
### Against Lamont Ratcliff, Robert Casimir, M.D., James Mark McBath, M.D., and Wellness Pain & Associates, Inc.

568.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

569.     Defendants Lamont Ratcliff, Robert Casimir, M.D., James Mark McBath, M.D., and Wellness Pain & Associates, Inc. (collectively, the "Count IV Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Midtown Surgical Group Corp. ("Midtown Surgical").

570.     The Count IV Defendants agreed to further, facilitate, support, and operate the Midtown Surgical enterprise.

571.     As such, the Count IV Defendants conspired to violate 18 U.S.C. § 1962(c).

572.     The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through Midtown Surgical even though Midtown Surgical was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count IV Defendants.

573.     The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of Midtown Surgical, the provision of false, fraudulent, and unnecessary healthcare services to Midtown Surgical patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented Midtown Surgical's reimbursement eligibility.

574.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) Midtown Surgical as a result of the Count IV Defendants' unlawful conduct described herein.

575.     By virtue of the Count IV Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT V**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Azog Enterprise)**
**Against Lamont Ratcliff, Kelechi Azuogu, M.D., and Wellness Pain & Associates, Inc.**

576.     Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

577.     Azog, P.A. ("Azog") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

578.     In connection with each of the claims identified in the within Complaint, Lamont Ratcliff, Kelechi Azuogu, M.D, and Wellness Pain & Associates, Inc. (collectively, the "Count V Defendants") intentionally caused to be prepared and mailed false medical documentation by Wellness Pain, or knew that such false medical documentation would be mailed in the ordinary course of Wellness Pain's business, or should have reasonably foreseen the mailing of such false documentation by Wellness Pain and/or by a personal injury attorney on behalf of a patient of Wellness Pain would occur, in furtherance of the Count V Defendants' scheme to defraud.

579.     The Count V Defendants knew that two (2) or more mailings would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings identified in the chart annexed hereto at **Exhibit 4**.

580.     The Count V Defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Wellness Pain, which they knew would be billed by Wellness Pain, and submitted to Allstate by Wellness Pain and/or by a personal injury attorney, in order to collect payment from Allstate.

581.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to Wellness Pain for the benefit of the Count V Defendants that would not otherwise have been made.

582.    The Count V Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count V Defendants to continue this unlawful scheme without being detected.

583.    By mailing numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

584.    The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Wellness Pain for the benefit of the Count V Defendants.

585.    The Count V Defendants participated in the conduct of the Azog enterprise through a pattern of racketeering activities.

586.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count V Defendants' conduct.

587.    The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

588.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

589.    Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

590.    By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT VI**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Azog Enterprise)**
**Against Lamont Ratcliff, Kelechi Azuogu, M.D., and Wellness Pain & Associates, Inc.**

591.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

592.    Defendants Lamont Ratcliff, Kelechi Azuogu, M.D., and Wellness Pain & Associates, Inc. (collectively, the "Count VI Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Azog, P.A. ("Azog").

593.    The Count VI Defendants agreed to further, facilitate, support, and operate the Azog enterprise.

594.    As such, the Count VI Defendants conspired to violate 18 U.S.C. § 1962(c).

595.    The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through Wellness Pain, even though Wellness Pain was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count VI Defendants.

596.    The Count VI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of Wellness Pain, the provision of false, fraudulent, and unnecessary healthcare services to Wellness Pain patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented Wellness Pain's reimbursement eligibility.

597.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) Wellness Pain as a result of the Count VI Defendants' unlawful conduct described herein.

598.    By virtue of the Count VI Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT VII**
**COMMON LAW FRAUD**
**Against All Defendants**

599.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

600.    The scheme to defraud perpetrated by Lamont Ratcliff, Reginald Williams, M.D., Robert Casimir, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Wellness Pain & Associates, Inc., Midtown Surgical Group Corp., and Azog, P.A. (collectively, the "Count VII Defendants") was dependent upon a succession of material misrepresentations of fact that the Count VII Defendants were actually and lawfully rendering medically necessary treatment and services and were entitled to collect payments from Allstate.

601.    The false representations made by the Count VII Defendants include, but are not limited to, those discussed in the medical documentation submitted to Allstate concerning the legitimacy of healthcare services purportedly provided to patients, and the actual ownership and control of Wellness Pain, Midtown Surgical, and Azog.

602.    The Count VII Defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

603.     The misrepresentations were intentionally made by the Count VII Defendants in furtherance of their scheme to defraud and deceive Allstate by submitting, causing to be submitted, and/or knowing that fraudulent claims for payment would be submitted to Allstate.

604.     The Count VII Defendants' misrepresentations were known by them to be false, or were made in reckless disregard of the truth, and were made for the purpose of inducing Allstate to make payments for claims that are not compensable under Texas law.

605.     Allstate justifiably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by and on behalf of the Count VII Defendants.

606.     As a direct and proximate result of the Count VII Defendants' fraudulent representations and acts, Allstate has been damaged as previously described herein.

**COUNT VIII**
**CIVIL CONSPIRACY TO COMMIT FRAUD**
**Against All Defendants**

607.     Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

608.     Defendants Lamont Ratcliff, Reginald Williams, M.D., Robert Casimir, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Wellness Pain & Associates, Inc., Midtown Surgical Group Corp., and Azog, P.A. (collectively, the "Count VIII Defendants") combined and concerted to accomplish the unlawful purpose of defrauding Allstate by submitting claims for payment to which they were not entitled because (1) the Count VIII Defendants did not provide the services billed to Allstate, (2) the Count VIII Defendants did not

provide reasonably necessary services, (3) the Count VIII Defendants did not lawfully render services, and (4) the Count VIII Defendants engaged in fraudulent billing practices.

609.   The Count VIII Defendants formed a meeting of the minds and worked together to achieve an unlawful purpose (namely, defrauding Allstate for personal gain).

610.   This purpose was known to all of the Count VIII Defendants and intentionally pursued by them.

611.   The Count VIII Defendants committed unlawful and overt acts by billing Allstate for services that were not actually provided, were not reasonably necessary, were not lawfully rendered, were fraudulently billed, and by creating and disseminating false medical documentation to accompany their fraudulent bills.

612.   In reasonable reliance on the false medical documentation submitted by the Count VIII Defendants, Allstate paid certain of the claims submitted.

613.   All of the Count VIII Defendants directly benefited from the payments made to Wellness Pain and Midtown Surgical.

614.   All of the Count VIII Defendants actively and intentionally partook in a scheme to defraud Allstate and also encouraged and aided other Count VIII Defendants in the commission of acts done for the benefit of all Count VIII Defendants and to the unjustified detriment of Allstate.

615.   Accordingly, all of the Count VIII Defendants are jointly and severally liable for the fraud perpetrated on Allstate by each other defendant pursuant to their conspiracy.

**COUNT IX**
**MONEY HAD AND RECEIVED**
**Against All Defendants**

616.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

617.     Defendants Lamont Ratcliff, Reginald Williams, M.D., Robert Casimir, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Wellness Pain & Associates, Inc., Midtown Surgical Group Corp., and Azog, P.A. (collectively, the "Count IX Defendants") submitted claims to Allstate that caused Allstate to pay money based upon a reasonable belief in the veracity of the Count IX Defendants' medical records and bills.

618.     The Count IX Defendants wrongfully obtained and benefited from payments from Allstate through the fraudulent scheme detailed herein.

619.     Good and services billed by the Count IX Defendants that were not actually provided, were not reasonably necessary, were not lawfully rendered, or were fraudulently billed had no value.

620.     Money that the Count IX Defendants obtained from Allstate for goods and services that were not actually provided, were not reasonably necessary, were not lawfully rendered, or were fraudulently billed belongs to Allstate in equity and good conscience, and should be returned to Allstate.

621.     The Count IX Defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT X
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against Wellness Pain & Associates, Inc., and Midtown Surgical Group Corp.

622.     Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-529 as if set forth fully herein.

623.     Defendants Wellness Pain & Associates, Inc., and Midtown Surgical Group Corp. (collectively, the "Count X Defendants") routinely billed for unnecessary and unlawful services with respect to the patients at issue in this Complaint.

624.     The Count X Defendants also billed for services not rendered.

625.     Pursuant to Texas law, an insurer is liable to pay only for reasonable and necessary expenses arising out of a motor vehicle accident. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021); *Havgood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2011).

626.     Moreover, a "health care provider commits unprofessional conduct if the health care provider . . . knowingly presents or causes to be presented a false or fraudulent claim for the payment of a loss under an insurance policy." Tex. Occ. Code § 105.002(a)(1).

627.     Where a provider is unable to show that an expense has been incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

628.     The Count X Defendants submitted, continue to submit, and cause to be submitted claims for unnecessary and/or unlawfully rendered medical services to Allstate, and other claims remain pending with Allstate.

629.     The Count X Defendants will continue to submit and cause to be submitted claims to Allstate absent a declaration by this Court that their activities are unlawful and that Allstate has no obligation to pay pending and previously-denied claims submitted by or on behalf of any of the Count X Defendants.

630.     Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count X Defendants billed for unlawful and medically unnecessary services that are not compensable under Texas law.

631.     Allstate also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count X Defendants were engaged in a fraudulent scheme

whereby they billed for fraudulent, unnecessary, and unlawful services, and submitted unreasonable charges for the same to Allstate at all relevant times.

632.    As such, the Count X Defendants have no standing to submit, pursue, or receive benefits, or any other payment from Allstate, and Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count X Defendants cannot seek payment from Allstate for benefits under any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint.

633.    Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count X Defendants cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed in the within Complaint.

## X.    DEMAND FOR RELIEF

WHEREFORE, plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate County Mutual Insurance Company, respectfully pray that judgment enter in their favor, as follows:

**COUNT I**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Wellness Pain Enterprise)**
**Against Lamont Ratcliff, Reginald Williams, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Midtown Surgical Group Corp., and Azog, P.A.**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT II
### VIOLATION OF 18 U.S.C. § 1962(d)
**(Wellness Pain Enterprise)**
**Against Lamont Ratcliff, Reginald Williams, M.D., James Mark McBath, M.D., Kelechi Azuogu, M.D., Tamara Welsh, N.P., Midtown Surgical Group Corp., and Azog, P.A.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
**(Midtown Surgical Enterprise)**
**Against Lamont Ratcliff, Robert Casimir, M.D., James Mark McBath, M.D., and Wellness Pain & Associates, Inc.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT IV**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Midtown Surgical Enterprise)**
**Against Lamont Ratcliff, Robert Casimir, M.D., James Mark McBath, M.D., and Wellness Pain & Associates, Inc.**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT V**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Azog Enterprise)**
**Against Lamont Ratcliff, Kelechi Azuogu, M.D., and Wellness Pain & Associates, Inc.**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT VI
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Azog Enterprise)
**Against Lamont Ratcliff, Kelechi Azuogu, M.D., and Wellness Pain & Associates, Inc.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VII
### COMMON LAW FRAUD
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT VIIII
### CIVIL CONSPIRACY TO COMMIT FRAUD
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)      GRANT all other relief this Court deems just.

## COUNT IX
### MONEY HAD AND RECEIVED
### Against All Defendants

(a)      AWARD Allstate restitution in an amount to be determined at trial; and

(b)      GRANT all other relief this Court deems just.

## COUNT X
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against Wellness Pain & Associates, Inc., and Midtown Surgical Group Corp.

(a)      DECLARE that Allstate has no obligation to pay pending and previously-denied insurance claims submitted by Wellness Pain & Associates, Inc. and Midtown Surgical Group Corp.;

(b)      DECLARE that Wellness Pain & Associates, Inc. and Midtown Surgical Group Corp. cannot seek payment from Allstate (or any Allstate Insured) pursuant to any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint;

(c)      DECLARE that Wellness Pain & Associates, Inc. and Midtown Surgical Group Corp. cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed in the within Complaint; and

(d)      GRANT such other relief as this Court deems just and appropriate under Texas law and the principles of equity.

## <u>JURY TRIAL DEMAND</u>

The plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate County Mutual Insurance Company, demand a trial by jury on all claims.

Respectfully submitted,
KING, TILDEN, McETTRICK, & BRINK, P.C.

*/s/ Hugh C.M. Brady*
_____
Hugh C.M. Brady
hbrady@ktmpc.com
Douglas McInnis
dmcinnis@ktmpc.com
350 Granite St., Ste. 2204
Braintree, MA 02184
(617) 770-2214

Attorneys for the Plaintiffs,
*Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate County Mutual Insurance Company,*

Dated:  June 4, 2024

## CERTIFICATE OF SERVICE

I, Hugh C.M. Brady, hereby certify that on June 4, 2024, I did file via CM/ECF the **Plaintiffs' Complaint and Demand for Jury Trial.** I hereby certify that, upon issuance of the Summons by the Court, the Complaint and related documents will be served in accordance with Federal Rule of Civil Procedure 4 upon the following defendants:

| | |
|---|---|
| Wellness Pain & Associates, Inc.<br>c/o Lamont Ratcliff<br>2000 Crawford, 16th Fl, Suite A<br>Houston, TX 77002 | Midtown Surgical Group Corp.<br>c/o United States Corporation Agents, Inc.<br>9900 Spectrum Drive<br>Austin, TX 78717 |
| Azog, P.A.<br>c/o Kelechi Azuogu<br>6930 Sable River Drive<br>Missouri City, TX 77459 | Lamont Ratcliff<br>2806 St Emanuel St<br>Houston, TX 77004 |
| Reginald Williams, M.D.<br>1808 1/2 Wheeler St<br>Houston, TX 77004 | Robert Casimir, M.D.<br>28264 Bennett Pass Dr<br>Spring, TX 77386 |
| James Mark McBath, M.D.<br>6019 Rose St<br>Houston, TX 77007 | Kelechi Azuogu, M.D.<br>7011 Fall Creek Ln<br>Missouri City, TX 77459 |
| Tamara Welsh, N.P.<br>9230 Brunel Ln<br>Houston, TX 77044 | |

Date: June 4, 2024

/s/ Hugh C.M. Brady

_____

Hugh C.M. Brady